THE MISSOURI PACIFIC RAILWAY COMPANY V. HENRY BRINKMEIER.

No. 14,902. (93 Pac. 621.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Compliance with Safety Appliance Act—Injury to Employee.* A railway company doing business as a common carrier engaged in interstate commerce has complied with the requirements of the act of congress relating to safety appliances enacted March 2, 1893 (27 U. S. Stat. at L. p. 531), and its amendments of 1903 (32 U. S. Stat. at L. p. 943), when it equips its cars with automatic couplers as prescribed by such act, and it will not thereafter be subject to the conditions imposed by section 8 of such enactment on account of subsequent defects in the couplers which ordinary care and diligence could not have avoided.

2. PETITION—*Allegations and Proof—Interstate Commerce.* A petition contained an averment which reads: "The Missouri Pacific Railway Company is and was, at all the times hereinafter mentioned, a corporation . . . doing business as a railway company, as a common carrier, in, into and through the counties of Sedgwick and Reno, in the state of Kansas, and into the states of Colorado, Nebraska, Missouri, Arkansas, Texas, Oklahoma and Indian Territory." *Held,* that it was not error to admit evidence thereunder showing that such railway company was engaged in interstate commerce.

Error from Sedgwick district court; THOMAS C. WILSON, judge. First opinion filed April 6, 1907. Reversed. Rehearing granted May 24, 1907. Second opinion filed January 11, 1908. First opinion affirmed.

*J. H. Richards,* and *C. E. Benton,* for plaintiff in error; *Smyth & Helm,* of counsel.

*C. V. Ferguson, L. M. Walter,* and *Edward A. Moseley,* for defendant in error; *Kos Harris,* and *V. Harris,* of counsel.

The opinion of the court was delivered by

GRAVES, J.: Henry Brinkmeier commenced this action in the district court of Sedgwick county against the Missouri Pacific Railway Company to recover damages for personal injuries received while in its employment as a brakeman. He recovered a judgment for $6500, and the railway company brings the case here for review.

The controlling facts are not seriously disputed. The controversy arises principally upon the construction of sections 2 and 8 of the act of congress enacted March 2, 1893, entitled "An act to promote the safety of employees and travelers upon railroads by compelling common carriers engaged in interstate commerce to equip their cars with automatic couplers and continuous brakes and their locomotives with driving-wheel brakes, and for other purposes." These sections read:

"That on and after the first day of January, 1898, it shall be unlawful for any such common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going between the ends of the cars.

"That any employee of any such common carrier who may be injured by any locomotive, car or train in use contrary to the provision of this act shall not be deemed thereby to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of such locomotive, car or train had been brought to his knowledge." (27 U. S. Stat. at L. pp. 531, 532.)

This law was amended March 2, 1903. The amendment, after the title and preliminary clause, reads:

"The provisions and requirements hereof and of said

acts relating to train brakes, automatic couplers, grab-irons and the height of draw-bars shall be held to apply to all trains, locomotives, tenders, cars and similar vehicles used on any railroad engaged in interstate commerce . . . in connection therewith." (32 U. S. Stat. at L. p. 943.)

It is urged that the petition does not state a cause of action under this law; that in it there is no averment that the car which inflicted the injury was being used in moving interstate traffic, nor any statement equivalent thereto; that there are no facts stated therein which suggest a violation of this federal statute, but, on the contrary, the averments clearly indicate that the pleader intended to state an ordinary case of negligence. The petition contains an allegation which reads:

"The Missouri Pacific Railway Company is and was, at all the times hereinafter mentioned, a corporation legally existing and doing business under and pursuant to the laws of the state of Missouri; and doing business as a railway company, as a common carrier, in, into and through the counties of Sedgwick and Reno, in the state of Kansas, and into the states of Colorado, Nebraska, Missouri, Arkansas, Texas, Oklahoma and Indian Territory."

Under such an averment proof that the defendant was engaged in interstate commerce may be properly introduced. It is unnecessary specifically to mention this act of congress in a cause of action predicated thereon. It is sufficient if the pleading contain facts which would suggest to a person familiar with such act that its provisions had been violated. (*Voelker v. Chicago, M. & St. P. Ry. Co.*, 116 Fed. 867.) All the coupling appliances of every railway company engaged in interstate commerce are subject to the provisions of this statute, and when it is shown that such a railroad company had a defective automatic coupler in use on one of its cars the additional averments necessary to state a cause of action are practically the same as those required in an action of ordinary negligence. We are unable, therefore, to hold that the petition is fatally

defective as against this objection, which appears to have been first specifically presented in this court. It is expressly admitted that the car in question was engaged at the time of the injury in moving interstate traffic, and is, therefore, clearly within the provisions of this statute.

There is a sharp controversy between the parties as to what constitutes a compliance with section 2 of the federal statute hereinbefore quoted. It is insisted by the plaintiff that every car used in interstate traffic must be equipped with the prescribed appliance, and at all times thereafter must be in proper repair; that if because of any defect therein an employee be injured the railway company will incur the burden imposed by the provisions of section 8, however diligent it may have been in an effort to discover and repair the defect. On the other hand, it is urged that when a car has been once supplied with the appliance as required by law the company will not in case of injury be subject to the provisions of section 8, unless it has been negligent with reference to keeping such appliance in repair.

The facts upon which this controversy depends, briefly stated, are: The plaintiff was injured while attempting, as a brakeman, to couple one car to another, each of which was equipped with an automatic coupler. One of the couplers was not in repair, being out of its proper position and turned so that it would not properly meet the one on the other car. The plaintiff, while attempting to adjust the defective coupler so as to make the coupling, got his foot between the couplers and received the injuries of which he complains. About a year prior to the injury the company received the car having the defective appliance, at which time the coupler was in perfect condition. When it became defective does not appear. So far as the evidence shows the plaintiff was the first person to notice the defect, and he made the discovery immediately before attempt-

ing to make the coupling. Upon these facts the trial court gave the jury instructions which read:

"You are instructed that under such act it was the duty of the defendant railway company not only originally to equip its cars with automatic couplers, as required by said act, but also to keep them in proper condition so that they could at all times be coupled or uncoupled without the necessity of the men going between the ends of the cars to assist in coupling or uncoupling them. And the railway company was bound to know at its peril that the coupler attached to the car in question was in proper working condition, and the fact that the defendant company may not have known of its defects or defective condition, if you find that it was defective, does not in any manner excuse its unlawful use.

"You are further instructed that if you find the plaintiff has established his injuries, and you find the coupler would not couple automatically by impact, he is entitled to recover for his injury, unless you further find that the plaintiff was negligent in the premises, which directly contributed toward his injury."

Under our construction of the statute these instructions are erroneous; they impose a materially greater burden upon common carriers than the law contemplates. The duty prescribed by them cannot be found in the express language of the statute, and therefore must have been placed therein by construction. If the language is open to construction, then it must be construed so as fairly to carry out the legislative intent as described by the act. (*United States v. Southern Ry. Co.*, 135 Fed. 122; *United States v. Lacher,* 134 U. S. 624, 10 Sup. Ct. 625, 33 L. Ed. 1080.) In this connection it is proper to consider briefly some of the conditions which led up to the enactment of this statute. During the year ending June 30, 1891, thirty-seven different styles of car-couplers were in use, and during that year 2660 employees were killed and 26,140 injured. (6th An. Rep. Inter. Commerce Com. [1892] p. 73.) In the messages of President Harrison of 1889, 1890, 1891 and 1892 he urged the necessity of congres-

sional action to ameliorate this wholesale destruction of human life.   In his message of 1889 he said:

"It is competent, I think, for congress to require uniformity in the construction of cars used in interstate commerce, and the use of improved safety appliances upon such trains.   Time will be necessary to make the needed changes, but an earnest and intelligent beginning should be made at once.   It is a reproach to our civilization that any class of American workmen should, in the pursuit of a necessary and useful vocation, be subjected to a peril of life and limb as great as that of a soldier in time of war."   (1 House Ex. Doc. p. 25.)

On March 2, 1893, this law was enacted.   These facts and the preamble, context and subject-matter of the act indicate with reasonable clearness that the real point aimed at by the statute was to eliminate from railroad service the old homicidal link and pin and to compel the adoption of a uniform class of automatic couplers, which would reduce the loss of life among railroad employees to the minimum.   In the case of *Johnson v. Southern Pacific Co.*, 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, Mr. Chief Justice Fuller, in speaking upon this subject, said:

"The object was to protect the lives and limbs of railroad employees by rendering it unnecessary for a man operating the couplers to go between the ends of the cars, and that object would be defeated, not necessarily by the use of automatic couplers of different kinds, but if those different kinds would not automatically couple with each other.   The point was that the railroad companies should be compelled, respectively, to adopt devices, whatever they were, which would act so far uniformly as to eliminate the danger consequent on men going between the cars."   (Page 16.)

In the administration of this law its manifest object should be recognized and promoted by giving full force and effect to its salutary and beneficent provisions.   In the performance of this duty, however, courts cannot indulge in rules of construction which change the meaning of the law from what its framers contemplated, nor

which make its requirements impracticable, unreasonable or impossible to perform. In our view the law is satisfied as to any specific car whenever that car has been supplied with the prescribed appliance. Whenever an automatic coupler such as the act of congress requires is attached to a railway-car it stands in the same category as all other appliances and instrumentalities used by railway companies. Thereafter it is the duty of the company to use reasonable and ordinary care and diligence to keep this and all other equipments in good repair and safe condition for the use of its employees, and a failure to do so constitutes negligence. This was the law before the act of congress was passed, and that act did not change the law in this respect. It seems reasonable to assume that if congress intended to impose a special duty upon common carriers to keep a particular appliance in repair, not applicable to all, such intent would have been expressed in clear and specific terms.

The construction given to this statute by the instructions of the trial court impose conditions which seem to be unreasonable, and, in some instances, would be impossible to perform. Every railroad appliance must inevitably wear out, break or become defective, and no degree of foresight can anticipate the time when repairs will be needed. Any appliance, especially couplers, may get out of repair while cars are being moved in the yards, or on side-tracks in making up a train, or while moving in a train between stations. Railroad companies are compelled to rely for information concerning defects in their appliances almost wholly upon the employees who use them. Necessarily it takes time to make repairs; no degree of diligence, within the limits of a reasonable possibility, would be sufficient to enable a railroad at all times and under all circumstances to keep its car-couplers in such a state of repair as to prevent a brakeman disposed to encounter danger, as the plaintiff did in this case, from receiving injury.

So far as the evidence shows the coupler in question in this case may have been thrown out of place by a jam received immediately before the plaintiff discovered it, in which case it would have been impossible for the company to have known of and repaired the defect. Statutes should not be extended by construction so as to produce such unreasonable results.

No case has been cited which can be regarded as an authority in support of the construction insisted upon. In the case of *United States v. Southern Ry. Co.*, 135 Fed. 122, this question was discussed, and the opinion seems to sustain the view here contended for by the plaintiff, but in that case it was found by the court that the railroad company had been guilty of gross negligence in not discovering and repairing the defect which caused the injury. The finding made the discussion wholly unnecessary to the decision of the case, and weakens its force as an authority. That decision was considered by the United States district court of Colorado quite recently, in the case of *United States v. Atchison, T. & S. F. Ry. Co.*, 150 Fed. 442, in which it was said that the conclusion there reached is exceptional, a departure from the general and better rule, and has been sharply criticized. In the case last cited the court said in its instructions, which are not reported:

"These couplings will get out of repair, and it takes time to repair them. It takes time to discover whether or not they are out of repair. It is the duty of the railroad companies to use prudence and the ordinary diligence of a business man, keeping in view the purposes of this act, to keep these couplings in repair. . . . The act, construed in an intelligent and practical way, would not impose on the railroad company the absolute duty, every instant, to have this coupling so that it would work automatically. If a coupling is out of repair, and the railway company handling the car then uses ordinary and reasonable care, considering the facilities at hand, to repair the coupling and put it in repair, so that it would comply with the act, then it is not liable."

We think the position of the Colorado court more reasonable and less liable to lead to impracticable results. The burden of proof was upon the plaintiff to show that the defendant was negligent in having this defective appliance in use. Upon this question there is a total failure of proof. The car was placed at the salt-works two days before the injury. It was brought from there in charge of the plaintiff, as brakeman. He did not discover this defect until immediately prior to the accident. There is no evidence as to when the car was last inspected, and nothing whatever appears to indicate negligence on the part of the defendant.

The jury were told by the instructions of the court that if the coupler was defective, and the plaintiff was thereby injured, a verdict against the defendant would be proper, regardless of whether it had been negligent or not. This was erroneous.

The judgment is reversed, with direction to grant a new trial and proceed in accordance with the views herein expressed.

---

OPINION ON REHEARING.

The opinion of the court was delivered by

GRAVES, J.: After the opinion had been filed in this case the interstate commerce commission requested that a rehearing be granted and that it be permitted, through special counsel, to present an argument, both oral and printed, upon the questions involved in the case. The defendant in error joined in this request. Appreciating the deep interest taken by this national tribunal in all cases arising under the provisions of the safety-appliance statute, and being anxious to receive all the light possible upon the questions involved, the rules applicable to ordinary actions were waived and the request granted.

At the rehearing extended arguments were presented, accompanied by an elaborate citation of au-

thorities. We have carefully examined the briefs and decisions submitted, and have reconsidered the questions discussed, but are unable to accept the contention of defendant in error as to the meaning of the federal statute when applied to the facts of this case, and therefore adhere to the opinion heretofore filed.

In the argument our attention was called to a question which was overlooked when the case was decided. It was urged before, and is insisted upon now, that the safety appliance act should not be considered, for the reason that the plaintiff's petition does not allege a violation of any of its provisions. The force of this position is found in the following facts: The injury complained of was received November 12, 1900. At that time, section 2 of this statute prohibited railroad companies from hauling any car used in moving interstate traffic and not equipped with the appliance required. In 1903 the law was amended so as to make its provisions apply, not to a car used in moving interstate traffic merely, but to all trains or cars used on any railroad engaged in interstate commerce. The petition does not allege that the car which caused the injury was being used in moving interstate traffic. It is, therefore, insufficient under the law as it stood when the injury occurred. It was held to be sufficient, however, because it contained averments which, by a very liberal construction, could be said to allege that the car by which the injury was inflicted constituted a part of a train owned and operated by a railroad company engaged in interstate commerce, which made it sufficient under the law as amended some three years after the cause of action accrued. The importance of these dates was not clearly indicated in the first argument, and was overlooked when the case was first considered.

The plaintiff in error was entitled to a reversal of the judgment upon this ground alone, and the case might have been so decided, if these facts had been clearly presented. We are satisfied, however, with the position taken in the opinion, and still adhere to it.

In view of the foregoing facts we now place the judgment of reversal both upon the ground that the petition does not state a cause of action under the statute and because the trial court erred in its instructions to the jury.

The original opinion is affirmed.