No. 22,852.

## J. H. COCHRAN, *Appellee,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

1. EMPLOYERS' LIABILITY ACT—*Petition Shows Both Parties Engaged in Interstate Commerce—Reference to Specific Acts of Congress Unnecessary.* In an action against a common carrier by an employee to recover for injuries, where it appears from the petition that both parties were engaged in interstate commerce at the time the plaintiff received his injuries, it is unnecessary that the petition refer specifically to the acts of congress upon which the action is predicated. (*Railway Co. v. Brinkmeier,* 77 Kan. 14, 93 Pac. 621.)

2. SAME—*Action Under Employers' Liability Act—Recovery Under Federal Boiler-inspection Act.* In an action under the Federal employers' liability act the plaintiff may recover for injuries caused by the violation of the Federal boiler-inspection act. (U. S. Comp. Stat. 1918, § 8631.)

3. EMPLOYERS' LIABILITY ACT—*Duty of Common Carrier to Furnish Employees With Safe Appliances With Which to Work.* In an action under the Federal employers' liability act, and the Federal boiler-inspection act, to recover for injuries caused by the dropping of the crown sheet of the boiler of a locomotive, causing an explosion which injured the plaintiff, held, that there is no force in the contention that his injuries were caused exclusively by his own negligence because there was some evidence tending to show that it resulted from the failure of the defendant to furnish safe appliances.

Appeal from Neosho district court; SHELBY C. BROWN, judge. Opinion filed June 11, 1921. Modified and affirmed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*J. Q. Stratton,* of Erie, *C. S. Denison,* of Pittsburg, and *John L. Kirkpatrick,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

PORTER, J.: The petition alleged that when the accident which caused the plaintiff's injuries occurred both parties were engaged in interstate commerce. It was not necessary, therefore, that the petition refer specially to the acts of congress upon which the cause of action is predicated. (*Railway Co.*

*v. Brinkmeier,* 77 Kan. 14, 93 Pac. 621.) Sections 3 and 4 of the Federal employers' liability act of 1908 (U. S. Comp. Stat. 1918, §§ 8659, 8660) provide that where an injury resulting to an employee is caused by the carrier's violation of any statute enacted for the safety of employees, neither contributory negligence nor assumption of risk shall constitute any defense. Therefore, two of the defenses pleaded in the answer, and referred to in the briefs, go out of the case. Section 2 of the Federal boiler-inspection act of February 17, 1911 (U. S. Comp. Stat. 1918, § 8631), provides in substance that it shall be unlawful for any common carrier to use any locomotive engine propelled by steam power in moving interstate or foreign traffic unless the boiler of such locomotive is in proper condition and safe to operate in the service to which it is put without unnecessary peril to life and limb, and it has been held that the last-mentioned act is a "statute enacted for the safety of employees" within the meaning of the employers' liability act. (*Great Northern Ry. Co. v. Donaldson,* 246 U. S. 121, syl. ¶ 2.) By the amendment to this act of March 4, 1915, it includes all parts of a locomotive used upon a railroad engaged in interstate commerce.

It is contended, however, that the injury was caused by the sole negligence of the plaintiff, and that therefore he cannot recover. This contention seems to be based upon the following facts: When the train stopped at Girard on the return trip the plaintiff, who was the engineer, discovered that the stay bolts supporting the crown sheet were leaking and he sent a telegram signed by himself and the conductor, to the train master and master mechanic at Chanute, stating in substance that all the crown-sheet bolts were leaking badly, and asking for instructions. No reply to the message was received. After waiting forty-five minutes, and after the conductor had received orders to go ahead, the train proceeded and had gone about seven miles when the crown sheet dropped and the explosion occurred. It is insisted that the engineer knew the condition of the boiler and the crown sheet and that he should not have proceeded further with the engine in that condition. Practically the same contention was urged in *Illinois Central R. R. Co. v. Skaggs,* 240 U. S. 66. In the opinion it was said:

Cochran v. Railway Co.

"It may be taken for granted that the statute does not contemplate a recovery by an employee for the consequences of action exclusively his own; that is, where his injury does not result in whole or in part from the negligence of any of the officers, agents or employees of the employing carrier or by reason of any defect or insufficiency, due to its negli-gence, in its property or equipment. . . . But, on the other hand, it cannot be said that there can be no recovery simply because the injured employee participated in the act which caused the injury. The inquiry must be whether there is neglect on the part of the employing carrier, and if the injury to one employee resulted 'in whole or in part' from the negligence of any of its other employees, it is liable under the express terms of the act." (pp. 69, 70.)

Assuming that plaintiff was negligent in not refusing to proceed further with the engine when he discovered the defective condition of the stay bolts, and until he received a reply to his message, his negligence in this respect could not be held the sole cause of his injuries.

The real question in the court below was whether the dropping of the crown sheet and the explosion which resulted were caused by a defective or insufficient condition of the crown sheet, or were due to the lack of water covering the sheet. It may be true, as defendant claims, that the great preponderance of the evidence showed that leaky stay bolts would not cause the crown sheet to drop, and showed that the accident could not have occurred except for the failure of the engineer to keep a sufficient supply of water on the crown sheet. On the other hand, there was the testimony of the engineer, the fireman and the rear brakeman, who rode on the engine, that just before the explosion the injectors were working properly and that there was a half glassful of water over the crown sheet. The fireman testified that it had not been more than a minute before the explosion when he looked at the water glass, and that it showed a half glass of water, indicating that the crown sheet was covered to a depth of about four inches; that he looked at the water glass on this trip every five minutes or oftener, and opened the gauge cocks when between stations. This witness also testified that when he received the engine in the morning at the roundhouse he noticed that two or three of the stay bolts were leaking, and that when the engineer sent the telegram two-thirds of the bolts were leaking badly. The jury might have discredited all of the testimony showing

that sufficient water was kept upon the crown sheet up to the time it dropped, but the jury did just the contrary, and it must be said that there was sufficient evidence to sustain the finding.

In their answers to special questions the jury said that the negligence of the defendant consisted of sending out a defective engine and also failing to answer the telegram sent by the engineer. It is claimed that these findings are insufficient to sustain the verdict, and further, that the acts of negligence found are not alleged in the petition. Of course, the failure to answer the telegram was not the proximate cause of the injury and it had nothing to do with plaintiff's right to recover. But there was so much said about the matter on the trial that its importance seems to have impressed the jury. That part of the findings may, and we think should, be entirely disregarded. Sending out a defective engine is broad enough in its scope to include an engine with a defective boiler and crown sheet.

In view of the evidence as to the plaintiff's injuries, the court is of the opinion that the amount of the verdict and judgment is excessive and that it should be reduced from $12,800 to $8,500. The plaintiff, however, is given the option to accept that amount or a new trial upon that issue.

In other respects the judgment is affirmed.

JOHNSTON, C. J., dissents from the modification.