· JOSEPH CREBARRY, Respondent, *v.* THE NATIONAL TRANSIT COMPANY, Appellant.

*Negligence — evidence as to the sufficiency of a scaffold.*

In an action brought to recover damages for personal injuries alleged to have been sustained by reason of the negligence of the defendant, it was shown that the plaintiff, an employee of the defendant, went up a ladder onto a scaffold and left his tools to be thrown up after him. Then, standing on the platform of the scaffold and leaning over to catch such tools, he put one hand on a stay lath, which had been left on by order of the foreman. The stay lath broke and the plaintiff was precipitated to the ground, receiving the injuries complained of. The work had been completed around the upper part of the scaffold, and it was the habit of the workmen as fast as they had finished the work to knock off the stay laths, which had nothing to do with the strength of the scaffold, and were not put up there for the men to hang or lean against.

*Held,* that the action was not maintainable ;

That there was no evidence upon which the jury was warranted in finding that there was any neglect of duty on the part of the defendant in failing to provide a reasonably safe place for its employees to work.

APPEAL by the defendant, The National Transit Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cattaraugus on the 7th day of March, 1892, upon the verdict of a jury for $1,000, rendered on a trial at the Cattaraugus Circuit, and also from an order made at the Cattaraugus Circuit on the 24th day of February, 1892, and entered in said clerk's office denying the defendant's motion for a new trial made upon the minutes.

*Charles S. Cary*, for the appellant.

*J. R. Jewell*, for the respondent.

DWIGHT, P. J.:

The action was for a bodily injury sustained by the plaintiff in falling from a scaffold on which he was at work for the defendant. He charges negligence to the defendant in the construction of the scaffold.

The work in which the plaintiff was employed was in " cutting down" oil tanks. These structures — some of them ninety feet in diameter — are composed of sheets of boiler iron, from four to five feet wide, riveted together in rings or rows, one on top of another, to the height of from twenty-five to thirty feet. To cut them down, the rivet heads on the inside of the tank are cut off or so reduced in size as to admit of the rivets being driven through, outward. This is done from the top of the tank downward, and necessitates the construction of a scaffold around the entire inner circumference of the tank, which may be lowered by stages as one ring after another is removed.

The scaffold is composed of bents, of two posts or standards each, one against the inner face of the tank, the other four or five feet towards the center, with crosspieces nailed on at the proper height to support the planks on which the workmen stand at the successive stages of the work. As each one of these bents is set up it is connected to the last one by stay laths of inch boards, nailed on obliquely to the inside posts, which serve to hold the bents upright. When one row or ring of the iron sheets has been unriveted and removed the workmen lower their platform of planks to the next tier of crosspieces below, and knock off the crosspieces from which the planks have just been lowered, which otherwise would be in the way of their passing from one part of the scaffold to another; and it is their habit at the same time as they lower their platform to knock off the stay laths or braces as they are called by some of the witnesses.

At the time of the accident to the plaintiff one ring or row of sheets had been removed, the platform had been lowered one stage and the crosspieces knocked off, but the plaintiff testifies that the corresponding brace or stay lath, just at the point where he was at

work, was left on by order of the foreman, "because the platform was weak." In what respect it was weak is not mentioned, nor is the fact at all material — except collaterally to account for the presence of the stay lath a little later — because the fall of the plaintiff, as will appear, was not due to any weakness of the scaffold.

Having lowered the platform the men went down to grind their tools before resuming the work. This done, the plaintiff went up again, by the ladder, leaving his tools to be thrown up to him. Then, standing on the platform and leaning over to catch the tools, he put one hand on the stay lath above him, it gave way and he fell to the ground, receiving the injury the responsibility for which he seeks to charge upon the defendant.

It seems to us that the action was not properly maintainable on the case as made by the record before us. The plaintiff seeks to maintain it on the ground that the defendant failed of its duty, as master, to provide a reasonably safe place for the plaintiff to do his work in. We do not think there was evidence upon which the jury was warranted in finding that there was any neglect of duty on the part of the defendant in this respect. There is no complaint — certainly no evidence — that the scaffold was not strong enough in every way for the work which the plaintiff and his fellow-workmen had to do. The stay laths added nothing to the strength of the scaffold. They were not put there for men to hang upon or to lean against. Their sole purpose was to keep the posts upright, and there is nothing to show that they failed to accomplish that purpose completely. Besides, there is not sufficient evidence, we think, to show that the loose condition of the brace was the fault of the defendant. There was direct evidence on its part that the braces were all securely nailed on in the first place, and the only evidence to the contrary was the fact that this one gave way under the pressure of the plaintiff's hand, and that among the boards which lay at the foot of the scaffold was one — not very well identified with the brace which gave way — which showed only one nail hole in one end, a part of which was split off. But this still left the question open whether the loosening of the brace was due to a defect of original construction, or to something which had happened to it since; and unless it was shown to be the former the fault was not chargeable to the defendant. Upon the evidence it seems to be much more

probable that the brace had been loosened in knocking off the cross-pieces, which the evidence shows were nailed close to the braces, or — unintentionally perhaps — in pursuance of the constant habit theretofore of knocking off the braces themselves as fast as the platform was lowered, than that it was originally nailed on so slightly that it would give way under the pressure of a hand lightly laid upon it.

On the whole we think the evidence fails to make out a case of negligence against the defendant in the construction of the scaffold, and that for that reason, even if the defendant's motion for a nonsuit was denied, its motion for a new trial should have been granted. (*Adsit* v. *Wilson,* 7 How. Pr. 64, 66; *Smith* v. *Ætna Life Ins. Co.,* 49 N. Y. 211.)

The judgment and order appealed from should be reversed and a new trial granted, with costs to abide the event.

LEWIS, HAIGHT and BRADLEY, JJ., concurred.

Judgment and order appealed from reversed and new trial granted, costs to abide event.