Statement of the Case.
NICHOLLS, J.
The plaintiff! prayed for a judgment against the two defendants in solido for the sum of $25,000, and interest. The district court rejected her demand, and she appealed.
She brought suit as the surviving mother of George D. Ederle. In support of her demand she averred that her son sustained injuries while in the employment of the Vicksburg, Shreveport & Pacific Railroad Company (referred to as the V., S. & P. R. Co.), on the premises of the other defendant company, at Ruston, in Lincoln, from the effects of which he died.
That before and up to said date he was employed by the V., S. & P. R. Co. as a member of the switching crew on duty at Ruston, attached to engine No. 313; said engine being at the time in charge of one R. Blunt, engineer. That the junction of the Arkansas Southern Railroad and the V., S. & P. R. Co. was in the town of Ruston, La., and that at the time of his injuries, the employés of the V., S. & P. R. Co. were doing the switching for the Arkansas Southern Railroad Company; said engine No. 313, in charge of R. Blunt, engineer, being run and operated by the employés of the V., S. & P. R. Co. in the switchyards and on the premises both of the V., S. & P. R. Co. and the Arkansas Southern Railroad Company by contract between the said corporations. That while said engine No. 313 was thus being operated under the control of the V., S. & P. employés in the yards of the Arkansas Southern Railroad Company, about the distance of two blocks or squares of the junction of the two railroads, and while there in the process of switching, a certain coal car belonging to the Southern Railroad Company (No. 70,160), and while loaded with coal, was pushed or kicked with great speed by the said engine No. 313 from a point near Louisiana avenue, in the town of Ruston, La., along the main line of the track of the Arkansas Southern, southward, .and said Ederle, in his capacity as switchman, was ordered by W. T. Welsh at the time, who was yardmaster in the employ of the Arkansas Southern Railroad Company, to board said car and apply the brakes thereto and stop the same, notwithstanding the extreme, unusual, and dangerous rate of speed at which said car was at the time running, and, in obedience to orders of the yardmaster, under whose direction and supervision he was working, her son did board said car with difficulty, and made every possible effort to stop same, but, because of the extreme speed of said loose car, running over the unfinished, dilapidated, unstable track of the Arkansas Southern Railroad Company, he was thrown from the narrow and dangerous position in which he was placed in the front end of said car. That he fell from said car across the main track of the Arkansas Southern Railroad Company. That his body was run over by the wheels of the said car, and his right leg broken and lacerated at or about the knee.
That the injury to her son was caused by the gross negligence and carelessness of the-railroad companies and of the employés of the companies.
That the said R. Blunt, engineer in charge of said engine No. 313, was incompetent and reckless in the operation of said engine, and had been previous to the accident convicted and several times tried before the mayor’s court of the town of Ruston for the reckless and dangerous operation of said engine, to the knowledge of said railroad companies. That the said car was, at the time the injuries were received by her son, running *731 loose, without any engine being attached, at a rate of speed which was at the time prohibited by ordinance of the town of Ruston, and at such rate of speed that the boarding and stopping of the car was in the highest degree dangerous and impossible. That the accident occurred after a lengthy season of rain, and during a heavy downpour of rain, which rendered the track of the Arkansas Southern Railroad, where said accident occurred, unstable and boggy, and unusually dangerous, and which rendered the ground and the top of the car slick and difficult to stand upon, and more difficult to board and stop the said car. That all of said conditions were disregarded by the railroad companies and their employes, and especially by said yardmaster and said engineer.
That said Southern coal car was extremely dangerous by reason of its construction. That no footing was provided on said car for a man to stand while applying the brake, and no means of reaching the brake was provided. That, notwithstanding said defects, said car was received by the Arkansas Southern Railroad Company, and accepted, and negligently and carelessly classified by it as being in good condition. That, after her said son was run over and injured as aforesaid, and while in the discharge of his duty, he was permitted by said companies to lie in the rain on the ground where he was hurt for several hours without medical attention, or any effort being made to save his life. That the said railroad companies failed and refused to summon or permit to be called to his relief either of their physicians or surgeons.
That said accident to her son was due wholly and solely to the wanton negligence and gross carelessness of the said railroad companies, and the employés thereof, without any fault whatever on the part of her said son.
That her said son left no widow or minor children or father, and that the cause of' action of the said Ederle for the injuries and suffering aforesaid survived, by his death, in favor of petitioner alone. That after said accident was inflicted, and before his death, he suffered great pain, anguish, and agony for more than 24 hours. That petitioner was not financially independent. That she had no means, scarcely, and her said son contributed largely to her support and maintenance. That by his death she was deprived of said support, and had been damaged in the sum of $5,000. That in the death of her said son she had been deprived of his love, affection, and companionship, and was thereby injured, to the extent and in the sum of $10,000. That for his pain, suffering, and agony she was entitled to recover damages in the sum of $10;000.
She prayed for judgment accordingly.
The Arkansas Southern Railroad Company excepted that there was no privity of contract alleged by plaintiff! between defendant and the V., S. & P. R. Co., and no allegation sufficient to connect the two defendants so as to legally bind them both for any damage in this case. It pleaded a misjoinder of xjarties defendant. It subsequently filed an exception that no cause of action had been alleged. Thereafter, under reservation, it filed an answer. After pleading the general issue, it admitted that plaintiff’s son was injured on its track while working with the switch-engine crew. But it alleged that it had no control over the said switching crew, and none of the said switching crow were under its control or employ, and this defendant was in no way responsible for that of that crew. But in the alternative, should the court hold otherwise, and hold that it was in any way responsible for the acts of the switching crew, then and in that event it alleged that the plaintiff’s son was an expert switchman of experience, and accex>ted the position as switchman under the employ of the V., S. & P. R. Co., and took all the risks necessary attending that position, and it was not respon *733 sible for any voluntary risk he may have taken, and of which he was aware.
It pleaded contributory negligence on the part of the deceased, George D. Ederle, and averred that he was about the age of 21 years, mature, and of long experience as brakeman in railroading and switching cars, and that plaintiff; had no legal cause of action against it, and no legal right to recover in this case.
In view of the premises, defendant prayed that plaintiff’s demands be rejected, with costs, and for general relief.
The V., S. & P. It. Co. answered. After pleading the general issue, it averred that the deceased was well aware of the hazardous occupation in which he was engaged, knew the character of the weather prevailing at the time of the accident, and knew the condition of the track, which respondent specially denied was had, and averred to be in safe condition; averred that he took all the risks incident to his said employment, and that he knew it was customary for railroads to make switches by kicking cars, as was averred by plaintiff’s petition, and that he had himself made switches in like manner with the same kind of car, at the same locality, on numerous occasions; averred that the accident was due solely and entirely to the negligence and carelessness of the deceased, and to his physical condition, resulting from an overindulgence in intoxicants several hours previous to the accident, which, although on the same day, and just preceding the accident, was unknown to it, as he claimed and appeared to company’s employSs to be sober.
In view of the premises, it prayed that plaintiff’s demands be rejected, and her suit dismissed.
Opinion.
Ruston, the town in which the injury to plaintiff’s son took place through the fault, as she alleged, of both of the defendant railroad corporations, is the junction of the lines of those companies; the tracks of the Vicksburg, Shreveport & Pacific Railroad Company, running east and west, and those of the Arkansas Southern running north and south.
The switching work of the two companies being insufficient to require the employment of two switching crews, an arrangement was made between the two companies by which the switching needed by the Arkansas Southern for its own purposes on its own tracks was performed by the use of a switch engine belonging to the V., S. & P. R. Co., operated by a switching crew employed by, and under the exclusive control of, that company; as to the performance of the work, the former company, however, paying the latter for the work done for it, according to the number of cars which it switched for and on its behalf. The yards of the two companies were distinct, though connected with each other, the yard of the Vicksburg Road being to the south of the other. It appears that on or about the --— day of-a coal car, with which the Arkansas Southern Company had no connection whatever, had been placed in its yard by the mistake of the officials of the other road, and on that day its agents sent its switching crew and engine upon the tracks of the Arkansas Southern to transfer the car to its own yard. The switching crew and engine went to the side track upon which this car was standing, attached it to the switching engine, and took it upon the main track of the Arkansas Southern. After backing the engine about a car length on that track, it detached the car from the engine and sent it down the track, southward, under the force which had been applied to it by the moving engine. The switching crew consisted of Walsh, the yardmaster, Blunt, the engineer, a negro fireman, • and two switchmen — one a negro, and the other George Ederle, the plaintiff’s son.
After the engine, with the car attached. *735 had passed from the side to the main track, and was backing down the main track, but before the coal car was detached from the engine, Ederle, who was standing alongside of the track, jumped upon the coal car at its southern end as it was passing him; the braking apparatus of the car being at that end. He got upon the car without difficulty or trouble, and set about at once holding the car in check by means of the brake; but, after proceeding down the track for some distance, he fell from the car, and was so badly crushed by it as to require the amputation of his leg, carrying with it his death, as the result. It is specially charged against the Arkansas Southern Railroad Company that its track between the point at which Ederle boarded the car, up to and including that at which he fell from it, was in a wretchedly bad condition; that Blunt, the engineer, backed the engine, with the car attached down the main track with reckless force, and sent the detached car down the track with such a dangerous rate of speed, and such jerking and rocking movements upon uneven and moving unstable rails and ties, as to fling Ederle from it to the ground, in spite of his exertions. The evidence establishes as a fact that the track of the Arkansas Southern was in bad condition, but the track in question was its main track, and the company was in full operation as a going railroad corporation, with no injurious consequences shown to have resulted to the public or to its own employés from its defective condition, so far as the record shows. It cannot be said to have been dangerous per se. It would only become so by the operation of cars upon it without proper and due care. The grade of the track between the points at which Ederle got upon, and that at which he fell from, the car, the evidence establishes, was what is termed a “water grade,” Which is defined by the witnesses as a gentle grade — one such as was only sufficiently inclined to cause “water to flow down it.” If the injury received by plaintiff’s son was occasioned by the faulty operation of the cars upon which and while he was working as the employé of the Vicksburg, Shreveport & Pacific Railroad Company, in the execution of its own work, plaintiff must look to his employers, and not to the Arkansas Southern Railroad Company. Counsel of that company forcibly urge that it was under no contractual obligation to the deceased. It had not, and could not have, discharged him. It had not employed and could not have employed any of his co-workers. It had no control over the persons who would be sent to do the work. It had employed the V., S. & P. R. Co. to do its switching, but who it would have to do it, and how they should do it, was a matter within its exclusive control. It could demand that the switching be done, but the V., S. & P. R. Co. alone directed the method of doing it. The Arkansas Southern furnished the switchyard where the work was to be done, but the other company did the switching. Whatever defects the yard contained were on the surface, and obvious to the deceased. If the track was dangerous, he should not have proceeded with the work. If it was safe when carefully used, the accident was attributable to no fault of the Arkansas Southern.
In this particular case the switching crew and engine were not engaged in switching for or on behalf of the Arkansas Southern Company. Its only connection with the transaction was the fact that the crew and engine, in doing that particular work, had of necessity to pass over its tracks to withdraw the car which had been placed in its yard without its knowledge or consent. Miller v. Ry. (Iowa) 39 N. W. 188, 14 Am. St. Rep. 258; Wood v. Locke (Mass.) 18 N. E. 578; Bibb’s Adm’r v. Norfolk Railroad (Va.) 14 S. E. 163. We think the judgment in favor of the Arkansas Southern Railroad Company is correct. Peyton v. Richards, 11 La. Ann. 63.
We now direct our attention to the demand *737 macle against the Vicksburg, Shreveport & Pacific Railroad Company.
We premise by saying that Ederle had been for several months in the employ of that company, engaged with this same crew at the same place, and under conditions substantially alike, which were known to him, and those of a physical character being apparent to every one. The track had been for several weeks in the same condition as it was on the day of the accident, and the particular character of switching known as a “kicking switch” had been frequently resorted to, Ederle taking part therein.
The ear from which Ederle fell was of the usual type. It had been inspected before, and was inspected again immediately after, the accident, and everything found right about it. Ederle boarded it in safety and without any difficulty, though he had to do so while it was moving, and, as it is now asserted, moving with dangerous speed. He was on the end of the car for some time before he fell or was thrown from it. He had switched before, without injury to himself, cars of the same kind, and some cause of injury must be sought for, other than defect in the car and its appliances.
We think plaintiff exaggerates the speed at which the coal ear was sent down the main track. As we appreciate the testimony, the engine, with the car attached, had come to a stop before the backing commenced, the force of which was to impel the ear forward. Under the testimony, the engine had not backed more than a car’s length before it was detached, and, as we have said, Ederle sprung upon the moving car without any trouble. While he was upon the car the grade was slight. After Ederle fell, Grayson, an employ® of the Vicksburg Company, ran along aside of it for some distance, .and got upon and stopped it. He says the speed had been considerably checked before he got upon it, by reason of Ederle’s having partially applied the brake. He placed the speed when he got upon it as five or six miles an hour. There is conflict of testimony as to the speed at which the car started when it was cut off, defendants’ witnesses fixing it at three or four miles an hour. We may accept as true that the car was pushed forward with too much speed, in view of the condition of the track over which it was about to move, without that fact carrying with it, as a consequence, liability by the defendant for the accident. It is shown that Ederle had been drinking the morning of the accident to such a degree as to have caused him to be relieved temporarily from duty; that he returned after dinner, just before the engine and car entered on the main track; that he sprang upon the car as it passed him, not in in obedience to any direct order given to him at that time to do so, but because it was his duty to board every car as it was being switched. Walsh, the yardmaster, who appears to have had generai charge of the switching, says that when Ederle returned he was not as bad as he had been in the morning; a person would have had to talk with him to have noticed that he had been drinking; that the only thing he said to him at the time was, he “asked him if he was fixed,” and he answered, “All right.” One or more witnesses declared that when he was at dinner he was not under the influence of liquor. He says that, had not Ederle made his appearance, he intended doing the switching himself. Whatever may have been the cause, it is unquestionable that for some reason Ederle’s conduct after he got upon the car was in the highest degree imprudent, and that it was the direct occasion of his falling from the car.
Conceding that the track was in bad condition, and the coal ear was sent over it with too great speed, there was nothing in the existing conditions, in our opinion, to have caused a switchman, acting with ordinary care and prudence, to have fallen or been thrown from it. In reference to this par *739 ticular branch of the case, counsel for the defense say: “The negligence of the deceased directly contributed to his injury, and bars the recovery of the plaintiff. The evidence discloses that he was an experienced switch-man, but that he was upon this occasion under the influence of intoxicants sufficient to overcome that care and caution which the hazards of his position exacted. According to the testimony of J. W. Brown, he occupied a position in attempting to stop the car which was dangerous in the extreme, when he might have taken a position much less dangerous. The evidence shows that the proper way to stop the car is to stand either with both feet upon the end sill, or with the right foot on the end sill and the left upon the buffer. In either position the switchman is upon a firm footing, and has the brake rod to hold to. The deceased had his right foot upon the buffer and his left foot upon the end sill, with the brake rod between him and the end sill, in such a position that he was bound to swing out from the car, and could not have stood at all, except by holding to the brake rod. If the court will look at the picture, it will see that in that position he could not use his left foot to place the dog in the ratchet without elevating the heel. and depressing the toe. The head of the ratchet bolt is between the end of the car and the dog, and is so high that, with the body of the foot placed upon the end sill, in such position as to support the weight of the switch-man, the toe rises above the dog. In lowering the toe so as to control the dog, the switch-man loses the support of that leg, and is supported only by his right foot and his hold upon the brake rod. This was a wholly unnecessary position to take, and, as the deceased voluntarily took it, when a safer position was possible, his injury is attributable to his own negligence.” Dandie v. Railroad Co., 42 La. Ann. 689, 7 South. 792.
We think this is a correct statement of the situation. We find no ground for complaint in the treatment of Ederle after meeting with his injury. There is nothing to show that the treatment of his case was other than, what it should have been, or that the removal to Shreveport was not a judicious act.
We think the judgment is correct, and it is hereby affirmed.