Statement of the Case.
MONROE, J.
This is a suit by a brakeman for the recovery of damages sustained by him through the alleged negligence of the defendant, by whom he was employed. The answer is a general denial, coupled with a plea of contributory negligence. The case having been tried without a jury, there was judgment for defendant, from which plaintiff has appealed.
The facts disclosed in the record are as follows: In April, 1906, plaintiff was about 21 years old, and, having worked as a brakeman on, different railroads for 3 or 4 years, was familiar with the ordinary risks of the position.
On April 2d he was employed in that capacity on a freight train owned by defendant, which, running south, had occasion to stop at Winona, in order to go on a siding and do the station switching. Just before reaching the stopping point, the crew had collected on the engine; the engineer and the fireman being at their posts, the conductor and plaintiff in the cab, and another brakeman, with the flagman, on the pilot. As the train was about to stop) the conductor ordered plaintiff to cut off the engine from the car to which it was attached, and plaintiff stepped off from the right side of the engine (the west side of the train), and went between the tank of the engine and the car to execute the order. The train was equipped with air brakes, and the air was conveyed from the' engine through a joint or section of a pipe or hose which extended from the rear of the tank on the right side, and passing under the couplings, was connected with the front of the car on the left side; and the first thing to be done, as a preliminary to the uncoupling of the engine from the car, was to cut off the air, for the accomplishment of which it was necessary to turn the cock which was attached to the pipe projecting from the engine and another cock which was attached to another pipe or hose on the car.
Plaintiff says that, standing with his face to the tank (which necessarily placed his left side to the coupling), he shut off the air from the engine by means of the cock attached to the engine; that he then turned, with his face to the car (which necessarily placed his left side towards the rail and away from the coupling), and, leaning oyer and against the coupling, shut the cock that was attached to the car; and that, while so doing, the engine rolled back, some six or eight inches, and mashed or pinched his left side between the buffer iron on the tank and that on the car. Hence the injury complained of, which did not prove to be very serious. *546 Neither the explanation so given nor anything else in the record, enables us to understand why plaintiff should have been pinched ■on the left side, unless it happened that, in pure carelessness, and without any necessity or reason whatever, he interposed as much of that side of his person as would get in between the buffers whilst he was shutting the cock on the tank; for it was only when he was facing the tank that his left side was presented to the buffers. Upon the other hand, when he undertook to lean over and against the coupling, and to get between the buffers, in order to shut the cock on the car, his face was necessarily turned towards the ear (and he so states), and'his right, not .his left, side was exposed to the pinching.
1-Ie says, also, that the train had stopped and was standing when the order was given to cut off the engine, and was in the same condition when he undertook to execute the order, from which the inference is suggested that the motion which caused the injury was Imparted by the engineer, or else that the engine or the cars moved of their own accord, in consequence of some defect in the engine, or by reason of the fact that the train had stopped at a place where the track was not perfectly level. Neither of these theories is supported by any proof, however, and from the affirmative testimony to the effect that the engine and appliances were in good condition, that the engineer did not cause the engine to move, and that the grade was very slight, taken in connection with the fact that plaintiff himself, at different times and in the presence of different witnesses, stated that he believed that “it was the slack rolling back, and not the engineer moving the engine,” we are satisfied that he went between the tank and the car before the train had settled to a condition of rest, and that the movement in question was merely the adjustment or taking up of the slack, which is a common and necessary incident to the stopping of all trains, and one with which plaintiff was perfectly familiar. We are also satisfied that the order given to plaintiff did not contemplate that he should .undertake to cut off the engine until the train had ceased to move, and that plaintiff so understood. Beyond that the evidence shows that there were two ways, by either of which he could have executed the order given to him without putting any part of his body between the buffers — the one by shutting the cock on the west side of the train while he was on that side, and then going to the other side and shutting the other cock; and the other way (if he did not choose to go to the east of the train in order to reach the cock on that side) by stooping under the draw-heads and buffers, instead of leaning over and against or between them. Plaintiff’s counsel argue that, because the answer says that plaintiff was injured by leaning “against and between the bumpers,” and because one of defendant’s witnesses testifies that there is not enough room between the buffers (or bumpers) to accommodate a man’s body, the answer amounts to a confession that the buffers were out of order and unfit for use. Nolan, the witness referred to, does not say, however, that there may not be space enough between the buffers, before the slack in a train is adjusted or taken up, to accommodate part of a man’s body, and as we understand the testimony it was only a part of plaintiff’s body that was so accommodated.
Upon the whole,- we are of opinion that the judgment appealed from is correct, and it is accordingly affirmed.