Statement of the Case.
MONROE, J.
Plaintiff sues for damages for the loss of his right foot, which loss he attributes to the fault of the defendant in failing to furnish one of its engines with proper safety appliances. Defendant pleads the general issue and contributory negligence. It appears that plaintiff had been working in the railroad service for some two years when he was employed by defendant as brakeman on a construction train which was operating near Monroe, in this state. About á month later, on June 15th, at dusk, the train, consisting of locomotive No. 75, a caboose, a water tank car, and a flat car, and the crew of which was composed of McCormick, conductor, Coates,' engineer, Shearron, fireman, and Williams (plaintiff herein), brakeman, arrived in the suburbs of Monroe, and, the flat car having been put into a siding, the train started to go on to its destination (the depot in the town), and had gone, perhaps, the length of the locomotive, when plaintiff, in attempting to step on the cowcatcher, missed his footing, and, instead, stepped on the rail, and his foot was run over, and mashed to such an extent that it had to be amputated on the following day. The locomotive was stopped so promptly, however, that plaintiff, who admits that he was holding onto something, did not .fall to the ground, but hopped along on his left foot until it stopped, when he was assisted into the caboose and carried into town. As the locomotive in question was engaged in construction work, and was required to move backwards as much as forward, it was provided with a cowcatcher on either end, and as, when the accident happened, it was moving in reverse order, with the water tank in front, the cowcatcher to which we have referred was the one upon the water tank. The story of the accident, as told by plaintiff, in his own testimony, is as follows:
“Mr. McCormick had told me to catch the rear end of the engine and .ride into town and flag the train across those crossings out there, and I went to the rear end — we were backing the engine in — and, when I went to catch the pin lifter, it must have pulled out with me some distance, enough to cause my foot to slip and throw it under the engine, and the engine ran over my foot,'” etc.
Being asked to describe the condition of the engine, he says:
“I don’t know anything about machinery, and couldn’t testify as to the machinery and things like that; but, as to the footsteps and footplates on the pilot, it had none. It ought to have had footsteps on the tank to ride on, and it didn’t. It didn’t have any footplates on the pilot of that tank and didn’t have no grabirons.”
I-Ie indicated, on a blueprint of the engine in question, the place, on the cowcatcher, upon which he put, or attempted to put, his foot, and which was shown to be upon one of the sides, about 11 inches inside of the rail (of the track), and he stated that the train was moving, when he attempt A thus to get on, at the rate of about four, miles an hour.
The conductor testifies that he might have told plaintiff to ride at head of the train and look out for the crossings, but he did not tell him to ride on the pilot, and that he could have ridden on the engine, or on the side step, holding onto the grabiron, and, from other testimony, it appears that the tank was fully and properly equipped, with a foot-board around the pilot, a strapstep on the side, a grabiron running perpendicularly, on each corner, one running horizontally, on each side, and a ladder on the rear end (that end being then in front); that brakemen ride on *897 the cowcatcher, as a matter of convenience, when flagging, that duty consisting of getting off and walking forward to a crossing and flagging vehicles that may be coming, so that, from a position on the cowcatcher, the flagman has less walking to do than if he is further back on the train. It is also shown that whilst getting on a moving train from the side, and upon steps or rests which project over the rails, may be accomplished with comparatively little risk, getting on the eow.catcher whilst the train is in motion, or, at least, stepping upon that part of the cowcatcher that is between the rails, is hazardous and is not usually done.
Opinion.
We fail to find in the evidence any necessity, or sufficient reason, for the attempt made by plaintiff; and that he was mistaken in saying that the tank in question had no grabirons on it and nothing for him to catch hold of, save the pin lifter, is practically admitted in his own subsequent testimony — the fact being that, after his right foot was run over and mashed, he maintained himself, in an upright position (hopping along, on his left foot, until the train was stopped), by holding onto the grabiron that he must have originally caught hold of, and which was fastened, horizontally, along the side, and near the end, of the tank. The pin lifter (or coupling lever) is not intended to serve the purpose of a grabiron, but is a movable handle, by means of which a car may be coupled to, or uncoupled from, the tank, without the brakeman’s going between the two. The conductor, as it happened, was on the pilot when plaintiff attempted to get on, beside him, and our conclusion, from the evidence, is that the accident happened as he states, 'to' wit:
“Instead of putting his foot on the step, on the bottom of the pilot, and stepping up, he missed that and put his foot on the rail, and it was mashed off.”
Under the circumstances, there is no ground upon which the defendant should be held liable.
It is, therefore, ordered, adjudged, and decreed that the verdict and judgment appealed from be set aside and annulled, and that there now be judgment in favor of defendant, rejecting plaintiff’s demand, at his cost in both courts.