(52 South. 1018.)

No. 17,908.

KREYE v. LONGVILLE LONG LEAF LUMBER CO.

(May 23, 1910.)

*(Syllabus by Editorial Staff.)*

1. MASTER AND SERVANT (§ 276*)—INJURIES—ACTIONS—SUFFICIENCY OF EVIDENCE.

In a servant's action for injuries sustained by falling from a shafting while walking thereon from one beam to another, evidence *held* to show that plaintiff slipped from the shafting before he attempted to catch hold of a pulley wheel thereon, which turned and caused him to fall.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 959; Dec. Dig. § 276.*]

2. MASTER AND SERVANT (§ 238*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Plaintiff and his brother, who were 6 feet 1½ inches high, were compelled to pass from the horizontal beam upon which they were standing in screwing nuts to bolts protruding from the ceiling, 9 feet 4½ inches above, to another parallel horizontal beam 8 feet ½ inch away, both beams being 6 feet 5½ inches from the ground floor. An iron shafting $3^{15}/_{16}$ inches in diameter, which had been greased, extended from one beam to the other and there was a broad-rimmed iron pulley, 25 inches in diameter, on the shafting about half way between the beams. About 4 feet lower than the parallel beams, about 2 feet above the ground floor, was a platform extending between the two beams, and plaintiff could have either stepped down upon it and passed from one beam to the other, or could have done so by first letting himself to the ground floor and getting upon the other beam by a scaffold or ladder, but instead he attempted to walk across the shafting when he slipped and caught hold of the pulley to save himself, but it turned and let him fall. There was no rule requiring employés to walk across the shafting in doing such work though they frequently did so of their own volition, and no one had used the pulley as a handhold in doing so. The negligence claimed was in not having the pulley keyed so that it would not have turned when plaintiff took hold of it. *Held*, in view of the shafting being greased, plaintiff was negligent in attempting to cross between the beams thereon.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 743–748; Dec. Dig. § 238.*]

3. MASTER AND SERVANT (§ 128*) — NEGLIGENCE—IMPROPER USE OF APPLIANCES.

Defendant was not negligent in not having the pulley wheel keyed of which plaintiff caught hold when falling, since the shafting was not intended to be used to walk across, and the pulley wheel was not provided for holding to when walking across the shafting; the master not being liable for injuries caused by the use of appliances for purposes for which he had no reason to believe they would be used.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 256; Dec. Dig. § 128.*]

4. MASTER AND SERVANT (§ 213*)—INJURIES TO SERVANT—ASSUMPTION OF RISK—SELECTING MORE DANGEROUS METHOD.

Plaintiff was also barred from recovering under the rule that a servant who selects an improper and dangerous route assumes the risk of resulting injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 560; Dec. Dig. § 213.*]

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Winston Overton, Judge.

Action by Charles Kreye against the Longville Long Leaf Lumber Company. From a judgment for plaintiff, defendant appeals. Judgment set aside, and suit dismissed.

Pujo, Moss & Miller, B. P. Finley, and W. R. Thurmond, for appellant. McCoy, Moss & Knox, for appellee.

PROVOSTY, J. A sawmill of the monster size was being constructed by the defendant company, in which there was no end of shaftings and pulleys, perhaps a thousand of the latter. Plaintiff and his brother, both of them tall men—6 feet 1½ inches— were mechanics employed in the work of construction. Their work necessitated their passing from one horizontal beam, upon which they were standing, 6 feet 5½ inches above the ground floor, to another parallel horizontal beam at the same level, 8 feet ½ inch away. Extending from one of those beams to the other, and resting on the top of them, was an iron shafting, $3^{15}/_{16}$ inches in diameter. On this shafting, about midway the distance between the two beams, or some 4 feet from the beam upon which the men stood, was a pulley, or broad-rimmed iron wheel, 25 inches in diameter. Parallel with the shafting, about 6 feet higher than it and about 3 feet to the side of it, was another*

beam—the exact space between it and the iron shafting being 7 feet 7 inches. About 4 feet lower than the beam upon which the men were standing—that is to say, about 2 feet above the ground floor—there was a platform, composed of 3 loose planks each 12 inches wide, extending the entire distance between the beam upon which the men stood to that which they desired to reach. This platform had been placed there for the use of a colored workman, who at the moment was upon it at work; but nothing shows that plaintiff and his brother could not have stepped down and walked upon it for passing from one of the beams to the other. There was also nothing to prevent them from letting themselves down to the ground floor and getting to the other beam by means of a ladder or other convenient means. Instead of doing this, the brother sought to get across by resting his feet upon the iron shafting and his hands upon the beam which ran parallel with it, some 6 feet higher and some 3 feet to one side. This necessitated his spanning a distance of 7 feet 7 inches (so that he could barely touch the beam with his fingers), and, as a consequence, came near resulting in his straining his back and falling. Plaintiff undertook to get across by walking on the shafting, and while doing so, lost his balance and fell, and suffered the injury for which he brings this suit in damages. If his statement is to be adopted, he put his left foot on the shafting, and, before lifting his weight from his right foot, leaned over and put his hand on the pulley, intending to steady himself by holding onto it; and, as he put his weight on it, it turned, and caused him to lose his balance and fall. In that statement he is corroborated by his brother; but he is contradicted by the colored man who was working on the platform, who says that plaintiff started out to walk upon the shafting and lost his balance, and only caught hold of the pulley in falling; and also by a physician who

saw him immediately after the accident, and who testified that in explaining how the thing happened he had said that he went to step over a pulley and in so doing lost his balance and fell; and also by the physician who attended to him in the sanitarium, in Shreveport, who testified that he told him, "I was on a line shaft, and when I proceeded to walk it, my foot slipped"; and, finally, by the foreman of the mill, who testified that he went to him as soon as he fell, and that when asked how it had happened, he said that "he attempted to walk the shaft and his foot slipped." The preponderance of the evidence is here decidedly with defendant; and we think it is also with defendant going to show that the shaft had been greased; and that, therefore, to venture upon it was the height of imprudence.

In justification of their action in attempting to get across from one of the beams to the other in the way they did, plaintiff and his brother say that their work at that place consisted in putting and screwing nuts to a number of bolts which protruded through the ceiling, or floor overhead; and that so little time was required for doing this work, that the natural and practical way of doing it was simply to stand on the beams and put on and screw the nuts, without taking time to construct scaffolding for the purpose, or even for passing from one beam to another; that to have gone down to the ground floor and procured planks for these purposes would have been a useless and unjustifiable waste of time. This testimony on the part of these two men is irreconcilable with the fact that the bolts to which the nuts were to be added and screwed were at the ceiling, 9 feet 4½ inches above the beams they were standing on, and therefore out of their reach as they stood upon the cross-beams.

The negligence which plaintiff charges the defendant company with is alleged to consist in that the pulley had not been keyed, so as

to be made immovably fast to the shaft, which was itself immovably joined to the machinery. The contention is that the well-known custom is for workmen to use such shafting for standing, or walking, upon, in doing their work, instead of having recourse to regular scaffolding, whenever the work can be done in that way and is not of sufficient importance to justify scaffolding; and that the invariable rule and custom is to key the pulleys, and thereby bind them immovably to the shaft, as soon as they are put on the shaft, in the course of construction; and that the thousand pulleys already put on their shafts in this mill at the time of the accident had been keyed in that way; and that, therefore, it was natural for plaintiff to suppose, and he had a right to assume, that this particular pulley had been keyed and was fast, and that he could rely upon it for steadying himself, or holding onto, while walking upon this shaft; and that the failure to have thus keyed it was negligence on the part of the defendant company.

Plaintiff testified that most of the thousand or so pulleys that had been already put upon their shafts had been keyed and made fast. His brother testified that all of them had been. Plaintiff produced several experts to prove that the custom was for workmen to use the shafting in the way of scaffolding whenever convenient in the course of construction; and that the invariable custom was to key the pulleys at the time of putting them on their shafts.

Defendant produced a greater number of witnesses and experts to prove the very contrary of all this; and, there can be no doubt, did prove it by a decided preponderance of testimony.

How, under the circumstances, the jury came to give a verdict in favor of plaintiff, we cannot imagine. For several reasons, the plaintiff cannot recover.

The main reason is that, even conceding everything that plaintiff says, the defendant has not been guilty of any negligence. It cannot be negligence for defendant not to have made safe for walking a place not intended to be used for walking, nor to have failed to make this pulley safe for holding onto in performing the acrobatic feat of walking upon this iron shaft, when this pulley was never designed for that purpose.

If by any command, or rule, the workmen had been required to use the shafting for walking upon in that manner, there might be some reason for holding the employer to the duty of making these shaftings safe for walking; but nothing of that kind is pretended. If the workmen ever do walk or stand upon these shaftings for doing their work, it is simply because they choose to do so, and at their risk and peril. That they quite frequently do so, the evidence shows; but it does not show that they are under any obligation to do so. Nor does it show that on any previous occasion the pulleys had been sought to be utilized as a handhold in accomplishing the dangerous feat of walking along the shafting. There was certainly no duty resting upon the employer to make these pulleys safe for this use. The learned counsel of plaintiff argue that it not being possible, or it being at any rate most difficult, for plaintiff to walk upon the shafting without steadying himself by holding on with his hands to something, it was the most natural thing in the world for him to catch hold of this pulley, especially after he had witnessed the danger his brother had gone through by trying to utilize the beam parallel with the shaft for steadying himself. And plaintiff produced several experts to testify that for him to have thus caught hold of this pulley for maintaining his balance while walking upon the shaft, was the natural thing to do. We agree with these experts that it was the natural thing to do—just as it is natural for drowning men to catch at straws; but we

think it would have been much more natural and consonant with reason and ordinary prudence for the plaintiff to have gone about reaching the other beam in some less acrobatic fashion.

"It is well settled that, where the instrumentality which caused the injury was still incomplete at the time of the accident, and the injured servant was engaged in the work of bringing it to completion, the question whether the master was in the exercise of due care is determined with reference to a lower standard than that which is applied in the case of instrumentalities which have been put into a finished condition and are in regular use in the normal course of the business." 1 Labatt on Master and Servant, p. 66, § 29.

See, also, Bedford Belt R. Co. v. Brown (1895) 142 Ind. 659, 42 N. E. 359 (bridge carpenter not entitled to recover for an injury caused by the slipping out of a wedge used in the construction of a track for the carriage of heavy timbers); Bennett v. Long Island R. Co. (1900) 163 N. Y. 1, 57 N. E. 79 (use of switch without lock or target, on a road under construction held not to be negligent); Allen v. Galveston, H. & S. A. R. Co. (1896) 14 Tex. Civ. App. 344, 37 S. W. 171 (recovery denied where the injured servant was engaged in constructing a bridge). 1 Labatt on Master and Servant, p. 66, notes.

"Although it is a master's duty to use due care to furnish his servants tools and appliances suitable for the purpose for which they are provided, he owes them no such duty when they put his tools to uses for which they are not intended. It is not negligence to omit a precaution applicable only to a situation which did not exist." 1 Labatt on Master and Servant, p. 59, § 26.

"If the servants undertake to use machinery or instruments for purposes for which the employer had no reason to suppose they would be used, it is their own fault or folly if harm comes from it. Felch v. Allen (1868) 98 Mass. 572. See, to same effect, Guenther v. Lockhart (1891) [61 Hun, 624] 16 N. Y. Supp. 717, affirming (1893) 137 N. Y. 529, 33 N. E. 336." 1 Labatt on Master and Servant, p. 64, notes.

And again:

"An employé hauling buckets of tar up on a roof lost his balance, and, in falling, grasped a triangular wooden 'horse,' used as an appliance in hauling up the buckets. The 'horse' was insufficient to withstand the strain, and fell with him. Held, that a peremptory instruction for defendant was proper, since the fact that the 'horse' fell when jerked by plaintiff did not show that it was insufficient for the use for which it was intended. Bell v. Refuge Oil Mill Co. (1899) 77 Miss. 387, 27 South. 382. A workman cannot recover against his employer for injuries caused by falling from a scaffold on the giving way of a stay lath to which he was holding while leaning over to catch his tools thrown to him from below, where such stay lath was intended solely to keep the posts of the scaffold upright. Crebarry v. National Transit Co. (1894) 77 Hun, 74, 28 N. Y. Supp. 291. A railroad company discharges its duty to an employé in furnishing a brake staff on a car sufficient for the use for which it is intended although it gives way when he attempts to use it as a handhold in climbing on the car while moving. Elgin, J. & E. R. Co. v. Docherty (1895) 66 Ill. App. 17. See, also, to same effect, Jayne v. Sebewaing Coal Co. (1896) 108 Mich. 242, 65 N. W. 971 (miner when about to ascend in a cage took hold of a loose nut, not intended as a handhold, and not affecting the safe operation of the machine, and had his hand crushed when the cage started); New York & N. J. Tel. Co. v. Speicher (1896) 59 N. J. Law, 23, 39 Atl. 661 (lineman used a crossbar carrying wires as a support in climbing a pole)." 1 Labatt on Master and Servant, pp. 60, 61, § 26, notes.

Another evident reason why plaintiff cannot recover is that embodied in the following extracts:

"A servant who selects an improper and dangerous route assumes the risk of resulting injury." Antee v. Richardson Taylor Lbr. Co., 123 La. 118, 48 South. 765.

"A servant who, without inquiry, selects an improper and dangerous route, assumes the risks of resulting injury." Sauer v. Union Oil Co., 43 La. Ann. 699, 9 South. 566.

"Where there are two avenues of travel, the person choosing the more dangerous one assumes all of its attendant and incidental risks." Settoon v. T. & P. Ry. Co., 48 La. Ann. 807, 19 South. 759. Also, see Ederle v. V. S. & P. Ry. Co., 112 La. 729, 36 South. 664; Dandie v. S. P. Ry. Co., 42 La. Ann. 686, 7 South. 792; Jenkins v. Maginnis Cotton Mills, 51 La. Ann. 1011, 25 South. 643; Schoultz v. Mfg. Co., 112 La. 568, 36 South. 593, 104 Am. St. Rep. 452; Taylor v. Ry. Co., 121 La. 543, 46 South. 621.

And in the recent case of E. L. Williams v. Arkansas, Louisiana & Gulf Railway Company (decided on March 14, 1910) 51 South.

1027, 125 La. 894, the court, reversing the judgment below, says:

"Where a brakeman is injured in attempting to step on the pilot of a moving engine, and the evidence shows that it is more dangerous to attempt to get on there than upon steps, or rests, on the side, which project over the rails, and that his duty did not require such attempt, there can be no recovery for the injury."

Judgment set aside, and suit dismissed at plaintiff's cost.