Levy had turned over to him, but the amount which he himself had collected, and absconded. That the defendant Levy, as a member of the firm, would be liable in an action for money had and received, is unquestioned. McFarland v. Crary, 8 Cow. 253. That action was one in assumpsit, and not in trover, as stated by counsel for respondents in his brief. That an action may be maintained for the conversion of money received in a fiduciary capacity, is also established. Britton v. Ferrin, 171 N. Y. 235, 63 N. E. 954; Jackson v. Moore, 94 App. Div. 504, 87 N. Y. Supp. 1101; People ex rel. Zotti v. Flynn, 135 App. Div. 276, 120 N. Y. Supp. 511.

The question in this case is whether in such an action an innocent partner is liable for the tortious acts of his copartner, and must go to jail if he is unable to pay the debt. "Partners are liable for the conversion by a copartner of the property of a third person, if done in the ordinary course of the firm's business. But innocent partners are not liable, when the conversion is not effected in the course of the firm's business, but as an individual transaction of the wrongdoer." 30 Cyc. 525; Battle v. Street, 85 Tenn. 282, 287, 2 S. W. 384; Stokes v. Burney, 3 Tex. Civ. App. 219, 221, 22 S. W. 126. The collection of plaintiffs' rents was within the scope of the partnership business; but the act resulting in the conversion was the individual crime of Pistor, committed without the defendant Levy's knowledge or consent, and from which he derived no benefit. It is true that, if defendants' firm had not been employed to collect plaintiffs' rents, Pistor would not have been in a position to steal them; but "a fraud committed by a partner while acting on his own separate account is not imputable to the firm, although, had he not been connected with the firm, he would not have been in the position to commit the fraud." Andrews v. De Forest, 22 App. Div. 132, 138, 47 N. Y. Supp. 1011, 1015. If a tort is committed by one partner, even though it was made possible by reason of his connection with the performance of partnership business, it may, from its nature or attendant circumstances, be shown to be only a several act. Parsons on Partnership (4th Ed.) 125. The author well illustrates the distinction when he says:

"If two physicians were in partnership, and one intentionally maltreated a patient," the other partner would not be liable; but if one was injured by the negligent act of a firm of physicians, in the course of his business, the other member of the firm would be.

The judgment appealed from should be reversed, and a new trial ordered; costs to abide the event. All concur.

---

LANE v. NEW YORK, O. & W. RY. CO.

(Supreme Court, Appellate Division, Second Department. November 23, 1910.)

MASTER AND SERVANT (§ 137*)—INJURY TO SERVANT—NEGLIGENCE.

A freight brakeman was killed while attempting to uncouple the engine at the very moment the train came to a full stop and the engineer threw his lever in a neutral position, caused by the relaxation of the engine causing it to sag back a few inches. The train was operated in the usual

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

manner. The evidence showed that an engine always sagged back when a heavy train came to a stop, but did not show that it could be avoided, or show that the brakeman indicated his intention of going between the engine and the car. *Held* that, even if the happening of the accident raised a presumption of negligence, the company was, as a matter of law, free from actionable negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 274; Dec. Dig. § 137.*]

Appeal from Trial Term, Orange County.

Action by Lottie Lane, administratrix of James W. Lane, deceased, against the New York, Ontario & Western Railway Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before WOODWARD, BURR, THOMAS, RICH, and CARR, JJ.

L. E. Higbee, for appellant.
John Bright, for respondent.

WOODWARD, J. The evidence in this case discloses that the defendant's servants ran a train into the yard and up to the station at Campbell Hall, N. Y., where the same was gradually brought to a standstill; that plaintiff's intestate, employed as head brakeman on this train, known as a "special coal train," rode into the yard upon the engine; that while the engine was still moving slowly he said to the engineer of the locomotive that he would go and see if any cars were to be taken on, and that he thereupon jumped from the locomotive and walked over to the station platform, where he entered into conversation with the station agent in reference to the taking on of cars; that while plaintiff's intestate was thus engaged the train gradually came to a complete standstill, and the engineer, following the custom, threw the lever, which determines the forward or backward movement of the locomotive, into the neutral position; that with this action on the part of the engineer the locomotive sagged back about six inches, and afterward the engineer saw plaintiff's intestate at a point near the rear of the locomotive, and between the engine and the first car of the train; that he walked over and sat down upon a near track, and that in about two minutes the engineer noticed that he appeared to be injured; that the engineer went to his assistance, sent for a doctor, and took him to a hospital, where he died soon afterward.

There was evidence that there were prints of the deadwood or bumpers upon the plaintiff's intestate's overalls, covering the abdominal space, and the inference might properly be drawn that the intestate had stepped between the locomotive and the car for the purpose of uncoupling the engine at the exact moment that the locomotive was put into a neutral position and sagged back into the train; but where is the negligence in this? The train was operated in the usual manner. It came to a full stop, and the engineer threw his lever into a neutral position, and the relaxation of the springs and drawing mechanism of the locomotive caused the locomotive to sag back, just as is always the case when a heavy train comes to a standstill, and there was no evidence in the case that this could have been avoided by any possible de-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

gree of care on the part of the engineer. When the engineer last saw the plaintiff's intestate, he was in a place of safety. The train at the time was just coming to a standstill, and the engineer turned his attention to properly adjusting his levers while the train was at rest. How the intestate reached the point of danger is not shown. There is no evidence that he in any manner indicated an intention of going between the cars, or between the locomotive and the cars; and how the defendant could have been guilty of negligence in not anticipating that he would do so, and in not guarding against this mere relaxing movement of the locomotive, is more than we have been able to comprehend—more than counsel has been able to suggest.

Even were this a case where it might be held that the mere happening of the accident raised a presumption of negligence, the only suggested cause of the accident explains itself. The common experiences of mankind establish that a heavy freight train, this one having 32 cars, brought to a standstill upon a slight grade, will relax a trifle when the drawing power is released, and the evidence in this case, afforded by the plaintiff's witness, is that the locomotive sagged back about six inches. It was a perfectly normal condition, and one in which there was no danger to be anticipated, unless some one happened at the particular moment to be between the locomotive and the car in the rear. It was certainly a danger as obvious to the plaintiff's intestate, who had been at work for some time in his capacity as brakeman, as it could have been to the defendant or its engineer; and no way is suggested in which the accident might have been avoided, much less of any reasonable regulation that could have been made which would have suggested itself to any reasonable-minded man in advance of the accident.

The judgment appealed from should be affirmed. All concur.