DECIDED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH

(*Continued from Vol. 58.*)

## PERRIN v. UNION PAC. R. CO.

No. 3480. Decided October 18, 1921. (201 Utah 405.)

1. APPEAL AND ERROR—RECORD OF FIRST TRIAL AT END OF WHICH COURT GRANTED A NEW TRIAL, PRESERVED IN BILL OF EXCEPTIONS, IS REVIEWABLE ON APPEAL. Where there were two trials and at the end of the first the court granted a new trial and the record of the first trial is preserved in the bill of exceptions the ruling if assigned as error may be reviewed on appeal from the final judgment.[1]

2. MASTER AND SERVANT—INSTRUCTION ON PRESUMPTION AGAINST CONTRIBUTORY NEGLIGENCE OF DECEASED EMPLOYÉ HELD CORRECT. In action for causing the death of a brakeman, instruction that in the absence of evidence there is a presumption that the deceased used due care about the work when he was killed, and that he did all that was reasonably required of him for his protection, was correct, where there was no evidence to show just how the accident happened.

3. NEW TRIAL—NEW TRIAL MAY BE GRANTED IF TRIAL COURT DETERMINES JURY DID NOT GIVE DUE WEIGHT TO UNCONTRADICTED TESTIMONY. In action for death of a brakeman, where the engineer

[1] *Hirabelli* v. *Daniels*, 44 Utah, 88, 138 Pac. 1172.

(1)

testified that the train had stopped when the brakeman's light disappeared on account of going between the cars, and his testimony was uncontradicted, it was the duty of trial court on motion for new trial to determine whether the jury had given due weight to this testimony, and if in its judgment the jury had failed to give it proper weight, it was no abuse of discretion to grant a new trial.

4. APPEAL AND ERROR—QUESTION OF WEIGHT OF EVIDENCE ON MOTION FOR NEW TRIAL IS FOR THE TRIAL COURT. Consideration of the weight of evidence on motions for new trial is peculiarly within the province of the trial courts.

5. APPEAL AND ERROR—ORDER GRANTING NEW TRIAL NOT SET ASIDE ON APPEAL UNLESS THERE IS AN ABUSE OF DISCRETION. Appellate courts will not set aside an order granting a new trial unless there is an apparent abuse of discretion.[2]

6. MASTER AND SERVANT—PRESUMPTION DECEASED BRAKEMAN EXERCISED ORDINARY CARE IN GOING BETWEEN CARS. In action against a railroad company for the death of a brakeman, where there was no direct evidence as to how the accident happened, held that there was a presumption that deceased exercised ordinary care in going between cars to connect an air hose.[3]

7. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE OF DECEASED BRAKEMAN QUESTION FOR JURY. In action against a railroad company for death of a brakeman, a presumption of the exercise of ordinary care by the deceased, which arose in the absence of direct evidence thereon, is sufficient to take the case to the jury where there is evidence of defendant's negligence.

8. NEGLIGENCE—EVIDENCE OF RESPONSIBILITY FOR INJURY INSUFFICIENT. If the probabilities are equally balanced that an accident was produced by a cause for which defendant was responsible, or one for which he is not the plaintiff must fail.[4]

9. EVIDENCE—PHYSICAL FACTS MAY BE RELIED ON TO SHOW NEGLIGENCE. In action for negligently causing the death of a brakeman, plaintiff may rely on physical facts to show that train moved while deceased was between cars, though conductor testified negatively that he did not observe it move.

[2] *Valiotis* v. *Utah-Apex M. Co.*, 55 Utah, 151, 184 Pac. 802; *Hirabelli* v. *Daniels*, 44 Utah, 88, 138 Pac. 1172; *Van Dyke* v. *Ogden Sav. Bank*, 48 Utah, 606, 161 Pac. 50; *Salt Lake Inv. Co.* v. *Stoutt*, 54 Utah, 100, 180 Pac. 182.

[3] *Lewis* v. *Rio Grande Western Ry. Co.*, 40 Utah, 483, 123 Pac. 97.

[4] *Tremelling* v. *South Pac. Co.*, 51 Utah, 189, 170 Pac. 83.

Appeal from Second District

10. MASTER AND SERVANT—EVIDENCE HELD TO SHOW NEGLIGENT MOVEMENT OF TRAIN WHILE DECEASED BRAKEMAN WAS BETWEEN CARS. In action against a railroad company for negligently causing the death of a brakeman, evidence held sufficient to prove that train moved after deceased went between cars to couple an air hose, and that his dangerous position was known to the engineer and conductor.

11. NEGLIGENCE—CIRCUMSTANTIAL EVIDENCE SUFFICIENT. While it was incumbent upon plaintiff to prove negligence, positive or direct proof is not required, but it may be inferred from the circumstances.[5]

12. APPEAL AND ERROR—ASSIGNMENT OF ERRORS NECESSARY. The Supreme Court is not authorized, either by statute or rules of court, to review any ruling of the district court, unless error is assigned designating or specifying the alleged error.[6]

13. APPEAL AND ERROR—WITHOUT REQUEST TO WITHDRAW IMPROPER REMARKS OF COUNSEL OR TO INSTRUCT THE JURY TO DISREGARD THEM, THE ERROR IS NOT REVIEWABLE. Where the trial court was not requested to withdraw remarks of counsel alleged to be improper, or to instruct the jury to disregard that part of the argument, the error is not reviewable.[7]

14. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE MITIGATES DAMAGES UNDER FEDERAL ACT. Under the Federal Employers' Liability Act, § 3 (U. S. Comp. St. § 8659), the fact that deceased may have been guilty of contributory negligence would not bar recovery, but could be considered by the jury in mitigation of damages.

15. MASTER AND SERVANT—RISK OF EMPLOYER'S NEGLIGENCE NOT ASSUMED. Where brakeman was injured through the negligence of his employer, the injury did not result from any usual and ordinary danger incident to his employment and the risk of injury was not assumed.

FRICK, J., and CORFMAN, C. J., dissenting.

5 *Dearden* v. *Railroad*, 33 Utah, 147, 93 Pac. 271; *Johnson* v. *Silver King Con. M. Co.*, 54 Utah, 34, 179 Pac. 61.

6 *Teakle* v. *Railroad*, 32 Utah, 284, 90 Pac. 405, 10 L. R. A. (N. S.) 486; *Andrews* v. *Free*, 45 Utah, 508, 146 Pac. 556; *Van Cott* v. *Wall*, 53 Utah, 282, 178 Pac. 42; *Sargent* v. *Union Fuel Co.*, 37 Utah, 392, 108 Pac. 928; *Smith* v. *Nelson*, 23 Utah, 512, 65 Pac. 485.

7 *Andrews* v. *Free*, 45 Utah, 508, 146 Pac. 556.

Appeal from District Court, Second District, Weber County; *A. W. Agee,* Judge.

Action by Elizabeth Mabel Perrin, administratrix of the estate of Arthur O. Perrin, deceased, against the Union Pacific Railroad Company. From judgment for plaintiff, defendant appeals.

AFFIRMED.

*Geo. H. Smith, John V. Lyle,* and *R. B. Porter,* all of Salt Lake City, and *C. R. Hollingsworth,* of Ogden, for appellant.

*John G. Willis* and *Howell & Wright,* all of Ogden, for respondent.

GIDEON, J.

The respondent, as administratrix of the estate of Arthur O. Perrin, deceased, brought this action to recover damages for his death. The damages are sought for the benefit of herself as the widow, and one minor child, Florence W. Perrin.

At the time of the accident, appellant was engaged in interstate commerce, and deceased was in its employ as a rear brakeman. Recovery is therefore sought under the federal Employers' Liability Act (35 U. S. St. L. 65, c. 149; U. S. Comp. St. §§ 8657-8665). Two trials were had. The first resulted in a verdict in favor of appellant. Thereafter the district court granted a new trial. That ruling is assigned as error on this appeal. The record of the first trial is preserved in the bill of exceptions, and is therefore before this court for review. *Hirabelli* v. *Daniels,* 44 Utah, 88, 138 Pac. 1172. The complaint charged negligence on the part of the appellant: (1) That appellant, in violation of its duty, negligently and carelessly backed its train and the cars between which the deceased had gone' for the purpose of connecting the air hose, a duty imposed upon him by his employment, without giving timely or any warning of

its intention to move the train; (2) that appellant, in violation of its duty, negligently and carelessly failed to keep the appliances of the cars, particularly the handhold of the angle cock of the air hose of the car where the deceased was working, in a state of repair, and permitting the same to become defective and insufficient. The answer denied negligence. As an affirmative defense defendant pleaded contributory negligence and assumption of risk.

The court, in its instructions upon the first trial, limited the consideration of the jury to one ground of negligence, namely, Did appellant after deceased went between the cars, move the train without giving the deceased notice of its intention to do so, and, if so, did the same constitute negligence upon which respondent could recover? Two of the grounds claimed for a new trial were: (a) Errors in law occurring at the trial; (b) insufficiency of the evidence to justify the verdict. The district court, as indicated by an entry in the record, was of the opinion that it had erred in not submitting to the jury both grounds of negligence alleged in the complaint and in limiting the consideration of the jury to one ground only.

Appellant contends that at the first trial no error was committed that justified the granting of a new trial. It is argued that the mere fact that the court may have committed errors of law, or that the verdict was not, in the judgment of the court, what it should have been under the evidence, does not authorize granting a new trial; that there was testimony in the record from which the jury could reasonably conclude that the respondent had failed to establish her right to recover, and it was therefore error on the part of the district court to grant a new trial.

Reliance is had upon the opinion of this court in *Hirabelli* v. *Daniels,* supra, to support appellant's contention. In the Hirabelli Case the district court granted a new trial for the reason that the jury had, in the judgment of the court, determined the damages in an amount less than the court thought the evidence warranted, and this court held that an

abuse of discretion.  Mr. Justice Straup, speaking for the court, said:

"We are indeed slow to interfere with a ruling granting or refusing a new trial on questions relating to damages, but a court on the measure of general damages cannot tie a jury to only pain suffered, and when they follow and obey that instruction, then set the verdict aside, not for a misdirection, but on the ground that they disregard or misconceived the instructions and rendered a verdict which the court thinks does not adequately compensate the plaintiff for his general damages."

In the present case the district court granted a new trial for the reason that it had limited the consideration of the jury to one ground of negligence.  The complaint charged two acts of negligence, and there was testimony, in the judgment of the court, tending to establish both.  The new trial was granted, not because the jury had disregarded or misconceived the instructions and rendered a verdict which the court did not think adequately compensated respondent, but rather for a "misdirection," or a failure to instruct upon an issue presented by the pleadings.  The court was of the opinion that such issue had some support in the testimony.  However, as this court is of the opinion that there was no testimony at either trial tending to prove that the condition of the angle cock was the cause of or contributed to the injury, no opinion is expressed as to whether granting a new trial would have been an abuse of discretion if there had been no other grounds authorizing or justifying such action.  There are other reasons which, in our judgment, warranted the court in granting the motion.

At the first trial the plaintiff requested the following instruction:

"You are instructed that in the absence of evidence there is a presumption that the deceased, Arthur C. Perrin, used due care in and about the work that he was engaged in when he was killed; and that he did all that was reasonably required of him for his protection while so engaged."

It is contended that the foregoing request is not a correct statement of law, and the refusal to give an erroneous instruction is never ground for granting a new trial, although the litigant may have been entitled to an instruction relating

to the subject of the request. It is argued, that the last clause of the above instruction does not state the law, and it would have been error to give the instruction as requested. Just in what way, the instruction is erroneous is not very clearly stated in counsel's brief. The instruction is applicable only in the absence of evidence as to just how the accident happened. There was no eyewitness. It is only in such cases that litigants are entitled to this or a like instruction. There seems to be no difference between the general instruction that the deceased "used due care in and about the work he was engaged in when he was killed," and the additional clause, "and that he did all that was reasonably required of him for his protection while so engaged." The exercise of due care necessarily implies the doing of what is reasonably required. That clause, at most, is but a reiteration of the first part of the instruction. The court refused to give the instruction. We are of the opinion the plaintiff was entitled to this or some similar instruction. The rule of law stated is not found in any other instruction given.

Moreover, at the first trial the engineer testified as follows:

"Q. Now, at the time the train stopped, the light at the rear end of the train was still visible, as I understood you a little while ago? A. Yes, sir.

"Q. The lantern light, did you afterwards see it disappear? A. yes, sir.

"Q. And when, with reference to the time you stopped the train? A. Why, the train was stopped when it disappeared.

"Q. The train was stopped when it disappeared? A. Yes, sir.

"Q. And when, with reference to that stoppage, did it disappear? A. Well, I don't know. I didn't pay any attention. It disappeared right away.

"Q. Now, when you say the train was stopped do you mean the entire train was stopped, or that the engine was stopped and the car next to you? A. As far as I know, the whole train was stopped."

That testimony was nowhere contradicted. After the train became stationary it could only move by some act of the engineer, either some movement of the engine or by releasing the air on the brakes, thereby permitting the slack of the cars to run out. In either event the defendant could be charged

with negligence by reason of the fact that the engineer knew the deceased had gone between the cars. It was **3, 4** the duty and privilege of the district court, in considering the motion for a new trial, to determine whether the jury had given due weight to this uncontradicted testimony. If in the court's judgment the jury had failed to give such weight to the testimony as it was entitled to receive, it was no abuse of discretion to grant a new trial. *Rison* v. *Harris,* 50 Okl. 764, 151 Pac. 584. Our statute relating to new trials is taken from the California Code. Consideration of the weight of evidence on motions for new trial is peculiarly within the province of the trial courts, as has frequently been held by the Supreme Court of that state. *Sherman* v. *Mitchell,* 46 Cal. 577; *Bjorman* v. *Ft. Bragg Redwood Co.,* 92 Cal. 500, 28 Pac. 591; *Garton* v. *Stern,* 121 Cal. 347, 53 Pac. 904; *In re Martin,* 113 Cal. 479, 45 Pac. 813; *Holtum* v. *Germania Life Ins. Co.,* 139 Cal. 645, 73 Pac. 591. To the same effect is the great weight of authority. 29 Cyc. 1011, note.

Appellate courts will not set aside an order granting a new trial unless there is an apparent abuse of discretion. *Valiotis* v. *Utah-Apex M. Co.,* 55 Utah, 151, 184 Pac. 802; *Hirabelli* v. *Daniels,* supra; *Van Dyke* v. *Ogden Sav. Bank,* 48 Utah, 606, 161 Pac. 50; *Salt Lake Inv. Co.* v. *Stoutt,* 54 Utah, 100, 180 Pac. 182; *Fitger* v. *Guthrie & Co.,* 89 Minn. 330, **5** 94 N. W. 888; 20 R. C. L. 227. There was no abuse of discretion in granting a new trial. Therefore this assignment of error cannot prevail.

Respondent was permitted to file an amended complaint. It is alleged that appellant is engaged in interstate commerce as a common carrier by railroad between Ogden, Utah, and Omaha, Neb.; that the deceased was at the time of the accident, to wit, on September 22, 1916, employed by appellant in such commerce as brakeman upon one of its trains; that at said time the appellant was transporting over its road, at or near a station known as Red Desert, in the state of Wyoming, a certain car equipped with power train brakes, which, together with other cars likewise so equipped, made up a train of railway cars at that time operated by appellant in said

commerce; that the appellant negligently, and contrary to the acts of Congress, permitted the said power train brakes upon said car to become defective and inoperative, and that the same were not maintained in accordance with the provisions of said acts; that at the time of the accident, in the discharge of his duty as brakeman, the deceased went between the said defectively maintained car and the caboose of the train for the purpose of connecting up the air hose of said car with the air hose of the caboose on said train, and that, while the deceased was so engaged, the appellant so negligently and carelessly maintained and operated its train that, as a result thereof, the said deceased was seriously injured and died from the effect of such injury.

The answer to the amended complaint denied the acts of negligence. The appellant further alleged that the deceased assumed the risks and dangers of the employment and that the injury was caused through his own negligence.

There is little, if any, dispute as to the facts. The accident happened at or about the hour of 9:30 p. m. The deceased was employed as a rear brakeman on a freight train traveling east on the line of appellant's railway in the state of Wyoming. The train arrived at Red Desert station about the hour indicated. The train was composed largely of coal cars. At a station west of Red Desert four or five additional cars, known as outfit cars, were placed in the train immediately ahead of the caboose. These cars were to be left at Red Desert. For that purpose a stop was made and the caboose disconnected from the train. The caboose was left standing on the main track. The outfit cars were placed on a siding. The remaining cars were pulled onto the main line and the engineer proceeded to back the train to couple onto the caboose. The deceased took his station at the east or front end of the caboose. The conductor, one Mr. Marti, was some 9 or 10 car lengths further east. The train was backing slowly toward the caboose, and when within about 20 or 30 feet of same the deceased, as part of his duty, gave a "slow down" or "stop" signal, indicating to the engineer that the rear of the train was approaching the caboose. Accordingly, the engineer ap-

plied the air brakes, gradually slacking the speed, and slowly pushed the cars back until the rear car came in contact with the caboose. The application of the air upon the brakes is controlled by the engineer operating a lever, and in that way the amount of force is controlled. A separate or independent set of brakes controls the engine, in no way connected with the air on the brakes upon the cars. The engineer testified that when the train came to a stop he immediately released the brakes on the cars and set the brakes on the engine. At the time of, or shortly after, giving the stop signal, and about the time the train became stationary, the light by which the deceased gave the signal to the engineer disappeared, apparently going between the cars. The conductor saw the light disappear. Both the engineer and conductor kept watching for a ''proceed'' signal. It was the duty of the deceased to give this signal as soon as he had connected the air hose of the caboose with the car immediately ahead and opened the angle cock. After a reasonable time, two or three minutes, and no one appearing, and no signal being given, the conductor walked to the rear of the train to ascertain the cause of the delay. Upon arrival there he found the deceased lying across the south or right rail of the track with the east or front wheel of the rear truck of the coal car, immediately ahead of the caboose, upon his body. The deceased was unable to speak and died a few minutes later. The conductor immediately gave the engineer a ''back up'' signal so as to remove the wheels of the truck from the body of the deceased. Upon the train moving, the conductor opened the angle cock between the caboose and the car ahead. The effect of opening the angle cock was to apply the air on the brakes, and that in turn stopped the train instantly. The conductor found the air hose between the caboose and the car ahead connected but the angle cock was not open. The lantern which the deceased had at the time he gave the signal to slow down was found standing upright near the center of the track, still burning, some three or four feet east of the body of deceased. The distance from the rear of the car to the front wheel of the rear truck is 12 or 15 feet.

There is much testimony as to what effect releasing the brakes would have upon letting out what is designated the "slack" of the train. On each drawbar connecting the couplings with the body of the car is a spring which compresses and recoils, controlled by the movement of the train. In backing the train, where the engine pushes against the cars, this "slack" is taken in, or the cars become bunched, and remain that way while the train is moving backwards, or while stationary if the brakes are set. The testimony is that there could be as much as 6 inches slack in each car. There were approximately 33 cars in this train, making it possible for the train to move 15 feet in letting out the slack. Necessarily, that would be controlled by the extent the cars had become bunched in the backward movement.

After the accident the train was moved forward and set out on a side track where it remained until some time after midnight. A special crew came from Rawlins, Wyo. and the train was taken to that place, arriving there about 7 o'clock on the following morning. At that time it became the duty of the brakeman who accompanied the train from Red Desert to disconnect the caboose from the car immediately ahead. He testified that he found the angle cock of the air hose difficult to operate, to such an extent that it was necessary in cutting off the air to strike the handle which controlled the valve with a hammer or brake rod.

At the close of the testimony appellant moved for a directed verdict upon the following grounds: (a) That there was no proof of any act of negligence alleged in the complaint, or otherwise; (b) assuming the angle cock was out of repair, it was not shown that said defect was the proximate cause of the injury; (c) whatever condition existed which caused the injury was a condition known to the deceased, the dangers of which he assumed; (d) assuming that the defective condition of the angle cock was the proximate cause of the death, there is no proof that appellant knew, or, by the exercise of ordinary care could have known, of such condition. The court denied the motion. The refusal of the court to grant the motion, and its refusal to give a peremptory in-

struction to find a verdict for defendant, constitute the principal errors relied on for a reversal.

There was no direct evidence as to just how the accident happened. It was the duty of the deceased to go between the cars, after coupling was made and the train became stationary, to connect the air hose and open the angle cock between the train' and the caboose. Under the facts disclosed by this record, the respondent was entitled to the presumption that the deceased was, at the time of the accident, in      6, 7 the exercise of ordinary care. *Lewis* v. *Rio Grande Western Ry. Co.*, 40 Utah, 483, 123 Pac. 97. That presumption alone would entitle the respondent to have the question of contributory negligence submitted to the jury if there is evidence in the record tending to prove negligence on the part of the appellant.

The testimony, considered in connection with the physical conditions found at the place at the time of the injury, establishes conclusively that the accident resulted from one of four conditions or state of facts: (1) Either the deceased went between the cars while the train was still in motion, connected the air hose while the train was still moving, set the lantern down in an upright position, and was then knocked over or tripped and fell while the train was still moving; or (2) the deceased went between the cars while the train was still moving, made the connection of the air hose, was either knocked over or tripped, and in falling the lantern was in some way knocked from his grasp and fell to the ground in an upright position near the center of the track; or (3) deceased went between the cars while the train was still in motion, succeeded in making the coupling of the air hose, set the lantern down at the time the train became stationary, and left it in an upright position for the purpose of opening the angle cock, and the train afterwards moved and deceased was knocked under the wheels, resulting in death; or (4) the deceased went between the cars after the train became stationary, placed his lantern on the ground either before' or after making the coupling of the air hose, and the train then moved and the injury resulted. If either the

third or fourth state of facts existed, then negligence is shown on the part of defendant. If the first or second state of facts is as reasonable or probable under all the circumstances and conditions surrounding the accident, then it is the duty of the court to hold that there is an absence of proof of negligence in the record, or any fact upon which negligence can be inferred.

This court, in harmony with the weight of authority, is committed to the rule that—

"If the probabilities are equally balanced that the accident was produced by a cause for which the defendant is responsible or by one for which he is not, the plaintiff must fail." *Tremelling* v. *Sou. Pac. Co.*, 51 Utah, 189, 170 Pac. 83.

To hold that the first or second state of facts is as reasonable or probable, under the conditions and circumstances disclosed by the record, as the third or fourth, is to run counter to the physical facts described by the witnesses, and in addition to that it ignores the presumption, to which the respondent is entitled, that the deceased was in the exercise of ordinary care in the performance of his duty at the time of the accident. The location of the lantern, the fact that the lantern was standing upright and was still burning, the position of the body, if not conclusive proof, is, at least, strongly suggestive and argumentative that the probabilities are that deceased went between the cars after the train became stationary. The same state of facts, in our judgment, meet the argument of appellant that there is nothing in the record to show that the train moved after it became stationary, and subsequent to coming in contact with and being coupled to the caboose. It is true the conductor testified he did not observe any movement of the train. That testimony was at most but negative. Had it been positive, the jury might have disregarded it, especially if found to be contrary to what the physical facts tended to prove.

The respondent relied upon, and had a right to rely upon, the physical facts to show that the appellant was negligent as charged in the complaint. In *Dodge* v. *Toth*, 95 Conn. 75, 110 Atl. 454, the Connecticut Supreme

Court of Errors, in discussing the evidence in a damage case, says:

"This witness named Barber, was one of the occupants of the automobile. His testimony was interpreted by the court, and perhaps correctly, as showing that Dodge was walking on his left-hand side of the road. With this interpretation in mind, the court said that the plaintiff offered no evidence in support of her allegation that the deceased was walking on his right-hand side of the highway, and, furthermore, that if the jury disbelieved Barber, as they were privileged to do, the result would be that the case would be barren of evidence tending to show due care on the part of Dodge. Underlying this statement of reasons is a serious disregard of the existence or importance of the physical facts in evidence attending the accident which the plaintiff relied upon and had the right to rely upon to show that Dodge was without fault."

It is, in our judgment, idle to argue that there is no proof that the train moved after deceased went between the cars. It is likewise idle to contend that the train did not move after deceased had coupled the air hose. The location of the lantern and the position of the body of deceased both conclusively prove the contrary. The duty of the deceased required him to go between the cars, when they became stationary, to connect the air hose and open the angle cock. Going between the cars while the train was in motion was not in the exercise of reasonable care in the performance of his duty. The deceased did go between the cars and did connect the air hose. The proof shows that in order to do that it was necessary for him to bring the two ends of the air hose together; that the air hose on the coal car was on the right-hand side of the coupling on that car, and the air hose on the caboose was on the left-hand side of the coupling on that car. It was therefore necessary for deceased to reach over or under the coupling in order to bring the ends of the air hose on the two cars together. It may be that can be accomplished by an expert railroad man while the train is in motion, but it hardly seems probable, and it would be in disregard of reasonable care to do so. In any event, to justify refusing to submit the question of negligence on that issue to a jury, the court must hold, as matter of law, that it was just as reasonable and probable that the deceased placed

his lantern upon the ground while the train was in motion, or that it fell from his hands in an upright position while the train was moving, as it is that he placed the lantern upon the ground at a time when the train was standing still. It was the duty of the deceased, after connecting the air hose and opening the angle cock, to transmit a signal, by way of waving or other movement of the lantern, indicating to the engineer and conductor that the train was ready to go forward. Notwithstanding that duty, and the fact that it was to be accomplished by waving the lantern, it is argued that the deceased may have placed his lantern upon the ground while the train was still moving. To assume that the deceased did or may have done that would be to assume that his conduct was contrary to that of a reasonable man placed in such circumstances.

The engineer stopped the train by the application of the air brakes. It should be remembered that so long as the air on the brakes was not released the train could not move. Therefore, if the train moved after becoming stationary, it could only do so by one of two ways, either by the engineer releasing the brakes on the train and permitting the slack to run out, or by some movement of the engine. It is in the testimony that the train did stop. The air on the train was not released until after the train came to a full stop. The engineer testified to that fact. The engineer also received the stop or slow down signal. It is not clear from his testimony on the second trial whether he received the signal from the conductor as relayed to him, or whether he saw the signal as given by the deceased, but that he received the signal and immediately applied the air is without dispute. The engineer, as an experienced railroad man, knew that when the train stopped it was the duty of the deceased to go between the cars and connect the air hose and open the angle cock. When that was accomplished it was his duty to give the signal indicating that the train was ready to proceed. The conductor testified that at about the time the train became stationary the lantern light disappeared, apparently going between the cars. It must be held, therefore, that not only

the conductor, by reason of actually seeing the lantern disappear, but the engineer, by reason of his expert knowledge of railroading, is charged with knowledge of the fact that the deceased was between the cars in the discharge of his duty. Any act which would permit the train to move while deceased was in that position would be an act of negligence on the part of the defendant.

It is strenuously argued on behalf of appellant, both in the original brief and in the brief on rehearing, that there is no proof of negligence on the part of appellant; that negligence is never inferred or presumed; that until there is some testimony showing negligence the court has no right to indulge in presumption or inferences, and in doing so is departing from the rule that has been frequently recognized by this court. Numerous cases are cited from this and other courts holding generally that it is incumbent upon the plaintiff in a damage case to prove negligence, and that negligence can never be presumed or inferred. We have no intention of departing from that rule, but it is likewise true that positive or direct proof of negligence is not required, but the same may be inferred from the circumstances surrounding the accident.

The Supreme Court of Oregon, in *Geldard* v. *Marshall*, 43 Or. 438, 73 Pac. 330, says:

"In an action by a servant against his master to recover damages for an injury, the burden of proof is on the plaintiff to show the negligence charged, and the mere happening of the accident is ordinarily not sufficient. * * * But it is not necessary that there should be positive proof of negligence. It, like any other fact, may be inferred from the circumstances. There may be, and are, cases in which the master's negligence is clearly inferable, although there is no positive proof thereof. The rule is that if two inferences may be legitimately drawn from the facts in evidence, one favorable and the other unfavorable to the defendant, a question is presented which calls for the opinion of the jury."

That rule of law received the approval of this court in *Dearden* v. *Railroad*, 33 Utah, 147, 93 Pac. 271. The court, at page 152 of 33 Utah, 93 Pac. 272, says:

"However, it is not essential, before a fact is made evident, that its existence be established by positive or conclusive evidence,

especially when it pertains, as here, only to the identity of a thing. If such were the case, the rule of evidence permitting the drawing of inferences and the deducting of facts from other facts is rendered useless."

The same rule of law again received the approval of this court in the recent case of *Johnson* v. *Silver King Con. M. Co.*, 54 Utah, at page 34, 179 Pac. 61. See, also, *Galvin* v. *Brown & McCabe*, 53 Or. 598, 101 Pac. 671. The court, therefore, did not err in denying the motion for directed verdict or in refusing to give the peremptory instruction to return a verdict for defendant.

A majority of this court are of the opinion that no testimony is found in the record that the defective condition of the angle cock, if it was defective, contributed to or caused the injury. If it be conceded that there is testimony tending to show that the angle cock was in a defective condition, it is not shown that the deceased attempted to open the same, or that its condition in any way contributed to or caused the accident.

No request was made to the district court to withdraw that issue from the consideration of the jury. No instruction was asked advising the jury that there was no evidence in the record upon which a judgment on that issue could be supported. No assignment is found in the record complaining of such issue having been submitted. It is first suggested in the petition for rehearing. It is therefore argued on behalf of respondent that any error the district court may have made in submitting that issue to the jury is not before this court for review. This court is not authorized, either by statutes or rules of the court, to review any ruling of the district court unless error is assigned designating or specifying the alleged error.

In *Teakle* v. *Railroad*, 32 Utah, at page 284, 90 Pac. 405, 10 L. R. A. (N. S.) 486, the court says:

"If the court erred in directing a verdict, such ruling ought to have been assigned, in order to authorize us to review it. The assignment of error is the foundation upon which rests the right of the appellate court to review the errors imputed to the trial court, and this court has repeatedly held that only such errors as are

assigned will be reviewed, unless it is something which goes to the jurisdiction of the court."

Again, in *Andrews* v. *Free*, 45 Utah, at page 508, 146 Pac. 556, it is said:

"If the defendants are right in their contention, then should the case have been withheld from the jury? For the actionable negligence is predicated on an alleged failure of the defendants to furnish him a safe place to work. Whether a duty was or was not imposed on the defendants as a master to furnish a safe place to work was for the court. If, on the undisputed evidence, as is argued, no such duty was imposed, then should the case have been withheld? But to impute error to the court in such particular required a motion or request on that ground to so withhold the case. No such motion was interposed."

See, also, *Van Cott et al.* v. *Wall*, 53 Utah, 282, 178 Pac. 42; *Sargent* v. *Union Fuel Co.*, 37 Utah, 392, 108 Pac. 928; *Smith* v. *Nelson*, 23 Utah, 512, 65 Pac. 485.

The motion for a directed verdict is not based upon the theory that there was no evidence authorizing the submission of the defect to the jury. The error of the court, if error was committed in submitting the question of the defective angle cock to the jury for consideration, is not before this court for review.

Error is also assigned for certain statements made by counsel in arguing the case to the jury, to which statements appellant noted an exception. The court was not requested to withdraw the remarks or to instruct the jury to disregard that part of the argument of counsel. Under the authority of *Andrews* v. *Free*, supra, any error, if error was committed in that regard, is not reviewable by this court.

As stated, the defendant was engaged in interstate commerce, and this action is brought under the congressional act known as the federal Employers' Liability Act. By the third section of that act (U. S. Comp. St. § 8659) the fact that the deceased may have been guilty of contributory negligence would not bar recovery, but such fact could be considered by the jury in reducing the amount which the respondent would otherwise be entitled to recover. The

court, in its instructions, advised the jury that such is the law applicable to this case.

It is also contended that the deceased assumed the risk of the dangers incident to his employment. If it be conceded that the defendant has presented by its pleadings the issue of assumption of risk, it is a sufficient answer to that contention to say that, if the injury resulted from the negligence of the defendant, the deceased did not assume the risk of such negligence. The injury in this case did not result from any usual and ordinary danger incident to the business or occupation in which the deceased was engaged. It resulted either from the neglect of the defendant in the operation of its train or from the contributory negligence of the deceased.

Some complaint is made of the failure of the court to give instructions requested by appellant and of certain instructions given. A careful examination of the instructions convinces us that the court fully and fairly instructed the jury upon the issues presented by the pleadings, and upon which there was testimony for the consideration of the jury.

The former opinion of this court is recalled. This opinion will be published as the opinion of the court.

We find no reversible error in the record. The judgment is affirmed. Respondent to recover costs against appellant.

WEBER and THURMAN, JJ., concur.

FRICK, J. (dissenting). I am unable to concur in either the reasoning or the conclusions of Mr. Justice GIDEON. In view, however, that the differences between us are radical and irreconcilable, a mere formal dissent would do justice neither to my Associate nor to myself. I shall therefore state the material facts as I understand them, and, in connection therewith, also state my view of the law which, in my judgment, controls this case.

The case was tried twice in the district court of Weber county. The first trial resulted in a verdict in favor of the defendant. Plaintiff, in due time, filed a motion for a new

trial, which motion was granted by the district court, and the case proceeded to trial for the second time. At the second trial the jury found for the plaintiff, and judgment was entered in her favor. The defendant made a motion for a new trial, which motion was denied.

While the appeal in this case is from the last judgment, the defendant has, nevertheless, preserved the proceedings had on the first trial in the bill of exceptions, and it asks us to review the proceedings had on both the first trial and the second trial.

The case was first submitted in this court in the October, 1920, term. An opinion affirming the judgment of the district court was duly filed. A petition for rehearing was, however, filed in due time, and a rehearing was granted in April of this year. The case was reargued and resubmitted in the May term of this year. While the writer hereof had prepared a dissenting opinion, he nevertheless did not file the same, but, with much reluctance, concurred in the opinion as first filed. He voted for a rehearing, however, for the reason that he entertained grave doubt respecting the correctness of the conclusions reached in the first opinion. Since then, the writer has had occasion to more carefully read the record, and also to more fully examine into the law which, in his judgment, controls this case.

I have now become thoroughly convinced that the findings of the jury and the judgment on the last trial are contrary to both the law and the facts, and hence should not prevail. I shall, as briefly as I consistently can, state the reasons which have impelled me to arrive at a conclusion contrary to that reached by my Associate, Mr. Justice GIDEON.

The defendant insists that the district court committed prejudical error in setting aside the verdict in its favor which was returned at the close of the first trial, and asks that the first verdict be reinstated, and that judgment be entered upon the same. The court granted a new trial, for the reason that in its judgment it had erred in not submitting to the jury a certain issue respecting the condition of an angle cock. In granting the new trial, the court, upon that subject, said:

"I think that the question of whether or not the injury and death of plaintiff's intestate was caused either wholly or in part by the condition of the angle cock ought to have been submitted to the jury."

In granting the new trial upon that ground the court erred, for the reason that, even though the angle cock had been defective, yet there was no evidence whatever that such defect was the proximate cause of the accident, and this court has so held.

The next proposition is that the district court erred in refusing plaintiff's request to instruct upon the question of contributory negligence. In my judgment there was not the slightest evidence upon which to base a finding of contributory negligence on the part of the deceased, and hence such a request was useless, and could not be the basis for a new trial.

It is next suggested that the court nevertheless did not err in granting a new trial, because, as stated in Mr. Justice GIDEON'S opinion, the district court in considering the motion for a new trial had the right to determine whether in its "judgment the jury had failed to give such weight to the testimony as it was entitled to receive." Mr. Justice GIDEON, therefore, concludes that if the jury did not do so the court did not abuse its discretion in granting a new trial. That, in my judgment, is stating the right of trial courts to interfere with jury verdicts too broadly.

Our statute (Comp. Laws Utah 1917, § 6802), so far as material here, provides that when a case is tried to a jury:

" * * * If it [the court] state the testimony of the case, it must inform the jury that they are the exclusive judges of all the questions of fact."

That section is divided into six subdivisions, and, with some changes, was adopted from the Code of Civil Procedure of Kansas. It was incorporated into our Code of Civil Procedure in 1898, and has been in force ever since that time. The clause above quoted, however, is not copied from the Kansas Code, but was written into our Code, and, so far as the writer is aware, is not found in any other Code. It certainly is not in the California Code, and is not a part of the

Kansas Code, as before stated. Section 7122 provides that the jury are the exclusive judges of the credibility of the witnesses.

This court, as a matter of course, takes judicial notice of the general practice and procedure that prevails in the courts of this jurisdiction. Pursuant to the foregoing statutory provisions the courts of this state, in all cases tried to juries which have come to this court in the past 20 years, have uniformly charged the juries that they are the exclusive judges of the weight of the evidence and the credibility of the witnesses. Such an instruction was given to the jury in this case. The foregoing practice has therefore been firmly established in this jurisdiction.

Now, I do not contend that the trial courts may not exercise a sound legal discretion in granting or denying new trials. Indeed, I contend that the trial courts should in all cases carefully scrutinize the evidence respecting every essential fact that must be established in case a motion for a new trial is made; and if, after doing so, the court is convinced that the evidence is insufficient—that is, that it is lacking in substance upon any material fact—the court should grant a new trial upon the ground of the insufficiency of the evidence to support the verdict, just as our statute providing for new trials contemplates. By insufficiency of the evidence, however, is not meant that the court may weigh the evidence for and against every essential fact, and, if in its judgment the weight is against the finding of the jury that it in its discretion may either grant or deny a new trial. The question is not whether in the judgment of the trial court the finding of the jury is supported by the greater weight of the evidence,, but the question is, Is the evidence lacking in substance upon any essential fact? · That, in my judgment, is the intent and purpose of our statute. If there is substantial evidence upon every essential fact, then the weight and credibility that shall be given to it is the exclusive province of the jury to determine. This, in my judgment, is so because the jurors may have interpreted the evidence differently from the court. They may also have observed some things during

the trial in the conduct and demeanor of the witnesses which may have escaped the notice of the court. Besides, the weight that is to be given to the evidence and the credibility of the witnesses must necessarily be lodged somewhere, and, in my judgment, it is just as safe to lodge it with a number of laymen of average intelligence and experience as it is to lodge it in one man, although he may be a trained lawyer.

By what I have said I do not mean that a court errs in setting aside a verdict which is clearly and manifestly against the weight of the evidence, but that more properly falls under the head of miscarriage of justice. The trial court, no doubt, may also grant a new trial if it is convinced that the jury has misconceived or misapplied the law, as stated in the instructions, to the facts, or in case they have failed to follow the instructions, or have entirely disregarded the evidence upon some material subject or question, or if the court is convinced that upon the whole case the verdict would result in a miscarriage of justice. In all of these instances the trial courts must exercise a sound legal discretion, but, in my judgment, they may not, as is broadly laid down in the prevailing opinion, grant new trials because in their judgment the juries have not given such weight to the evidence, or to some part thereof, as the trial courts think it should have received.

I am not unmindful of the fact that numerous cases can be cited where it is broadly stated that the trial court may exercise its discretion in granting a new trial upon the ground that the verdict is against the weight of the evidence; in other words, that the trial court may pass upon the weight of the evidence. When the cases are critically examined, however, it will be found that only a few go to that extent, although many cases are cited as having that effect. But, as I have pointed out, our statute is sui generis upon that subject, and should be given effect. I am constrained, therefore, to withhold my assent to the proposition stated in the prevailing opinion.

While, in my judgment, the district court erred in granting a new trial upon the specific grounds stated, yet the de-

fendant was not injured in a substantial right by the grant-
ing of a new trial, for the reason that the action was based
upon the federal Employers' Liability Act, and the instruc-
tions of the court upon the first trial were manifestly incom-
plete and insufficient upon the questions that arose under
that act. For that reason, therefore, the court did not abuse
its discretion in granting a new trial. Upon the second trial
all the questions arising under that act were fully presented
by the instructions, which, however, have not been done on
the first trial.

This brings me to the proceedings had on the second trial.
The plaintiff filed an amended complaint upon which that
trial was had. The complaint covers more than 12 pages of
the printed record, and is therefore too long for insertion
here, or to make even a condensed statement of the allega-
tions therein contained. It must suffice to say that the com-
plaint is sufficient both in form and substance. The defend-
ant, in addition to denying the alleged negligence on its part,
also set up contributory negligence and assumed risk.

I shall confine my statement to the evidence produced by
plaintiff at the second trial, all of which is without conflict.
From that evidence it was made to appear that on September
22, 1916, the date of the accident, the deceased was employed
by the defendant as a rear brakeman upon a special freight
train consisting of 32 cars of coal, one tool car, and four
"outfit" cars; that on the evening of that day, between the
hours of 9 and 10 o'clock, the train arrived at Red Desert, a
station of defendant's railroad about 50 miles west of Rawlins,
in the state of Wyoming, going eastward toward Rawlins;
that the train crew consisted of the engineer fireman, con-
ductor, head brakeman, and the deceased as rear brakeman;
that upon arriving at Red Desert the train was stopped on
the main line, and the caboose was detached therefrom for'
the purpose of "setting out" the four "outfit" cars which
were immediately ahead of the caboose; that the tool car re-
ferred to was set out either at Red Desert or a station west
of it, the evidence not being clear as to that; that after the
caboose had been detached the train was moved forward on

the main line a sufficient distance to permit the "outfit" cars to be switched backward onto what is called the business track, which was by backing the train and by placing the cars upon that track; that when that had been done the train was moved forward on the main line to be again attached to the caboose, which was standing on the main line; that the train was accordingly moved backward on the main line.

The conductor, who was called as a witness for plaintiff, testified that the train was moved backward slowly and at about the speed that a man would walk if he were "walking leisurely;" that he was standing on the south side of the track about 10 or 12 car lengths—that is, between 400 and 500 feet—from the caboose where the deceased was standing on the south side of the track waiting for the rear end of the train to reach the caboose, which was about 1,200 feet from the engine; that when the rear end of the train was about to reach the caboose the deceased gave the usual stop signal, which the conductor relayed to the head brakeman, and which the latter gave to the engineer; that upon giving the stop signal the train moved backward very slowly and when the coupling with the caboose had been made the train stopped; that, while the night was clear—that is, cloudless—it was, nevertheless too dark for the conductor to see the deceased, who was at the side of the train at or near the caboose; he however, did see the light of the lantern carried by the deceased, which disappeared as soon as the train had stopped and the coupling had been effected; that when the light disappeared the conductor assumed that its disappearance was caused from the fact that the deceased had stepped onto the track between the rear car of the train and the caboose for the purpose of coupling the air hose so as to connect the air with the caboose; that after the light had disappeared the conductor waited to receive the forward signal from the deceased, which he expected would be given as soon as the air hose was connected; that, not receiving such a signal for several minutes (the conductor is not clear as to the length of time), he walked back to the caboose, and upon arriving there found the deceased's body lying across the south rail

of the track, his head and shoulders extending south of the south rail, and the front wheel—that is, the east one of the rear truck of the car next to the caboose—resting upon his breast; that when the conductor arrived the deceased was "still gasping," but soon died; that in order to move the truck from the body of the deceased the conductor immediately signaled the engineer to back the train slowly, which was done; that as soon as the train commenced to move backward the conductor stepped in between the caboose and the rear car and opened the angle cock to permit the air to pass backward "into the caboose," and by that means set the brakes, which stopped the train abruptly and so that the body of the deceased could be taken from the track, which was done.

The body of the deceased was lying "about 6 or 8 feet" east of the rear or west end of the rear coal car, and his lantern, with the light burning, was standing about "2 or 3 feet east of his body in the middle of the track," under the car. The conductor further testified that the only thing which was left undone which the deceased was required to do was the opening of the angle cock, so as to connect the air with the caboose. He also testified that, while he was standing opposite the train waiting for the deceased to connect the air hose, and to give the signal for the train to move forward, he did not notice any movement of the cars or the running out of the slack. Further, that the movement of the train was the usual and ordinary movement in making a switch such as was made, and that the appliances were all in good order and were working all right; that the angle cock worked all right when he opened it, as before stated.

The engineer was also called as a witness by the plaintiff, and he stated in detail how the train was being operated in switching the cars; that as soon as he had received the signal to stop the train, when the rear coal car had reached the caboose, he moved the train very slowly backwards, and when he felt that the train had been coupled to the caboose he at once set the independent brake on the engine, and, in accordance with what he said were the instructions, "always

to release the air'' when the independent brake on the engine
was set, he did ''release the air'' on the train. He also said
that the switching and coupling was done in the ordinary
and usual way, and that he did not notice any slack running
out. The engineer, however, testified that there was a slight
downward grade westward, so that the engine was slightly
higher than the caboose, and that it was possible that the
slack ran out without his noticing it. He was positive, how-
ever, that after he set the independent brake on the engine
the engine did not move. He also said that by reason of the
slight downward grade the slack, in his judgment, had run
out when the rear end of the train had reached the caboose.

The evidence is also to the effect that the play or slack be-
tween the cars was, if anything, greater than was the dis-
tance that the cars moved backwards, so that the rear end
of the train might have moved backward without any move-
ment on the part of the engine. It also was shown that with-
in about 10 minutes after the train was moved from the body
of the deceased his body was placed on a passenger train
which passed at the time, and was removed from the scene
of the accident; that the special freight train was then re-
moved from the main line and placed upon the side track,
where it remained until about 3 o'clock the next morning,
when it was taken by a special train crew to Rawlins; that
after arriving at Rawlins the next morning the rear brake-
man of the special crew, in attempting to work the angle cock
which was on the rear end of the coal car, and the one the
conductor had opened the night before when the accident
happened, found that it worked hard. He said:

"Why, I went to turn the angle cock; it was a little stiff, and
had to pound it over with a hammer, and pounded it over with a
hammer and cut the air hose in by the caboose."

He afterwards explained that the angle cock was one in
general use, and that in order to turn the ''handle'' it had
to be ''lifted a little.'' There was also evidence on the part
of the defendant, which was not disputed, that proper inspec-
tion of the angle cock and appliances had been made, etc.,
and that they were all in good working order. This latter
evidence is, however, not material.

At the close of plaintiff's evidence, and again at the close of all the evidence, the defendant requested the court to instruct the jury to return a verdict in favor of the defendant upon the grounds: (1) That there was no evidence showing negligence on the part of the defendant; (2) that the deceased assumed the risk as an incident to his employment; (3) that, if it be assumed that the angle cock was defective, there nevertheless is no evidence that such defect was the proximate cause of the injury and death of the deceased, and that if there were a defect there is no evidence whatsoever that the defendant had any notice or knowledge of such defect in time to have cured it. The court refused the request and submitted the case to the jury, which, as before stated, returned a verdict for the plaintiff.

The defendant assigns the court's ruling as error and in its brief and argument insists that the ruling of the district court was prejudicial for the reasons before stated.

By the first assignment referred to the defendant squarely raised the question as to whether there is any substantial evidence upon which to base a finding of negligence on the part of the defendant or of any of the train crew. Where that question is raised, as it is here, by a request to direct a verdict, then the question of whether there is any substantial evidence of negligence under the federal act is a question for the court, and will be reviewed by the Supreme Court of the United States. *Chicago, R. I. & P. R. Co.* v. *Devine,* 239 U. S. 52, 36 Sup. Ct. 27, 60 L. Ed. 140; 18 R. C. L. p. 866, § 328. This court is therefore bound to consider the question of whether there is any substantial evidence in this record authorizing a finding of negligence on the part of the defendant or of any of the train crew. If there is not, then the district court erred in refusing to direct a verdict. 18 R. C. L. p. 826, § 281. I am thus required to make at least a brief review of the evidence.

As before pointed out, in this case the evidence upon the question of negligence all comes from the plaintiff's witnesses, and is without dispute. Plaintiff proved at the trial that the switching was done in the ordinary and usual way; that there

was no movement of the engine from the time the train was coupled onto the caboose, and that if there was any movement of the cars it was due solely to the "running out" or the "taking up" of the slack between the cars. While it is true that the circumstances clearly indicate that the rear end of the train must have moved backward after the deceased stepped between the rear coal car and the caboose, yet the evidence is also clear and positive that the engine did not move, and that there was ample play or slack between the cars to account for the backward movement of the rear end of the train. In view of those undisputed facts there is no room for an inference that the engineer moved the train backward, and therefore there is no basis for any inference of negligence on his part. Nor is there the slightest evidence that any other member of the train crew was guilty of any act either of omission or commission constituting negligence. Moreover, there is not the slightest evidence in this record that the running out of the slack was not an ordinary and usual occurrence; nor is there any that it could have been prevented. Neither is there any evidence as to what caused the deceased to be under the wheels of the car. What caused him to be there is left entirely to conjecture. No doubt it may be assumed that the accident occurred in the course of his employment, but that is not enough. It must also be shown that it was caused through the negligence of the defendant or some of the train crew. 18 R. C. L. p. 826, § 281.

It is contended, however, on behalf of the plaintiff that to permit the slack to run out after the deceased had gone between the caboose and the coal car to connect the air hose and to turn the angle cock constituted negligence; or, at least, was such an occurrence from which the jury could infer negligence. May the jury, however, infer negligence from the switching of cars which plaintiff's own evidence shows was done in the usual and ordinary way? May they infer negligence from the mere fact that the cars, in accordance with the law of gravitation, slowly moved down grade until the slack had run out? How can a jury of laymen, without any experience in operating trains, legitimately arrive at such a

conclusion? In the absence of any evidence that what was done in the usual and ordinary way was improper or dangerous, how can a jury be permitted to declare it to be so? If a finding of negligence can be sustained in this case, then it will be practically impossible to switch cars upon a track that to any extent inclines one way or the other so as to cause the slack to run out from the engine or to run in toward the engine, and thus to cause the cars to move, without being guilty of negligence. While there is no doubt in this case that the cars moved backward after the train had been stopped and the engine brakes had been set by the engineer, yet, upon the other hand, the evidence is clear and explicit that the engine did not move, and that the movement of the cars was due solely to the slack running out. As pointed out by Mr. Justice Woodward in the case of *Lane* v. *New York, O. & W. R. Co.,* 141 App. Div. 145, 125 N. Y. Supp. 971, such an occurrence is but natural and to be expected. In the course of the opinion it is said:

"The common experiences of mankind establish that a heavy freight train, this one having 32 cars, brought to a standstill upon a slight grade, will relax a trifle when the drawing power is released."

No one can successfully controvert the foregoing statement. Nor can it be successfully disputed that cars will not move to some extent after a train has come to a sudden standstill in case the track inclines one way or the other, which is a very usual thing. How can such an occurrence, without more, constitute negligence in the operation of trains? There is therefore no substantial evidence of negligence in this case, and for that reason the court erred in not directing a verdict.

There is, however, still another reason why the court erred in refusing to direct a verdict. In view of the undisputed evidence the deceased in entering into the employment as brakeman assumed all the ordinary risks which were incident to that employment. The district court so charged the jury. In view that under the evidence the death of the deceased was not caused by reason of defendant's failure to comply with any of the provisions of the federal act in providing the

appliances in the act specified, the defense of assumed risk is available to it. *Seaboard Air Line* v. *Horton*, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; *Southern Ry. Co.* v. *Crockett*, 234 U. S. 725, 34 Sup. Ct. 897, 58 L. Ed. 1564.

In *Taylor* v. *Rock Island, A. & L. R. Co.*, 121 La. 543, 46 South. 621, the rule respecting the assumption of the risk of moving cars is stated thus:

> "Adjusting or taking up slack is a common and necessary incident to the stopping of all trains, and one the risk of which the brakeman assumes when he undertakes to uncouple cars before the train is at rest."

In *Cincinnati, N. O. & T. P. Ry. Co.* v. *Evans*, 129 Ky. 152, 110 S. W. 844, the rule is stated in the headnote in the following words:

> "When decedent became a railway brakeman, he assumed all the risks of the employment as usually conducted, *including the negligence of his fellow brakemen,* and jerks of cars resulting from the taking up of the slack in the movement of cars made with ordinary care by the engineer." (Italics mine.)

I have italicized the seven words in the quotation for the purpose of directing the reader's attention to the fact that under the federal act the fellow-servant rule does not apply, and hence those seven words must be eliminated. Excepting the seven words, however, none of which has any bearing in this case, the law is correctly reflected in the statement.

To the same effect is the case of *Briggs* v. *Union Pac. R. Co.*, 102 Kan. 441, 175 Pac. 105. In that case it was held that a fireman assumed the risk under the facts there stated. In that case, as in this, the jury found that the defendant was negligent, but the court held otherwise. In the course of the opinion it is said:

> "The fireman had a right to assume that the engine would not be started until he was in the engine cab. It was started, however, without him. When he came out of the lunchroom the engine and a number of cars had already gone by, and the train was going forward. He was immediately and manifestly confronted with all the difficulties and dangers to be encountered in reaching his place on the engine. It would be fatuous to say he was not aware of them, and it would be an impeachment of the mental capacity of

a competent man to say he did not appreciate them. * * * The whole situation created by the engineer's negligence lay before the open eyes of this experienced trainman the moment he stepped out of the lunchroom. He voluntarily chose his course, and voluntarily assumed the risk attending his choice."

In the foregoing case the Supreme Court of Kansas, in concluding the opinion, points out that that case, like the one at bar, was based upon the federal act. With regard to that the court said:

"The case being governed by federal law, the court has applied that law, as expounded by the Supreme Court of the United States."

The judgment of the district court in entering judgment for the defendant notwithstanding the verdict of negligence by the jury was therefore affirmed. It should be remembered that in the foregoing case the assumption of risk was based upon the ground that the fireman was aware of and appreciated the danger, and therefore assumed the risk upon that ground.

In *Pete* v. *N. O., T. & M. R. Co.*, 134 La. 608, 64 South. 485, it is held that a brakeman's "going between cars while they were in motion was uncalled for and was an unnecessary assumption by him of a known risk," for which he could not hold the master.

In *L. & N. R. R. Co.* v. *Greenwell's Adm'r*, 144 Ky. 796, 139 S. W. 934, the rule is stated in the headnote thus:

"The ordinary jerking and bumping which always accompanies the switching of freight cars within the yards of the company does not, of itself, constitute negligence on the part of the company.

"Those who accept employment as switchmen and brakemen and whose duty requires them to be on and about the cars are fully advised as to the risks incident to their employment, which they must assume if they expect to take part in that employment."

In *Stool* v. *So. Pac. Co.*, 88 Or. 350, 172 Pac. 101, the Supreme Court of Oregon states the rule thus:

"The general rule is that an employé of a railroad company assumes all the risks ordinarily incident to his employment, including those arising from the ordinary operation of trains upon the railroad."

In that case the rule just stated was applied to a section man working on the track. If that rule applies to a section

man, how much more strongly does it apply to an employé like the deceased who is actually engaged in operating the trains upon the track.

In this connection it is important not to confuse contributory negligence with assumption of risk. That is sometimes done, and under certain circumstances is of no importance. In this case, however, the distinction is important. It has frequently been pointed out by the courts that assumed risk and contributory negligence may arise out of the same set of facts. In *Wheeler* v. *C. & W. I. R. R. Co.*, 267 Ill. 306, 108 N. E. 330, it is said: "Assumed risk and contributory negligence" may both "arise under the facts of a case." Many illustrations are found in the decided cases, to which it is not necessary to refer.

In view of the undisputed facts of this case it is very clear that the risk, if there was one, in passing between the caboose and the rear coal car before the slack had entirely run out was one which was incident to the employment, and hence was assumed by deceased. Moreover, in view of plaintiff's evidence, this case is not one where it can be inferred that the movement of the train or of the cars was caused by any act or omission of the engineer. The movement, what movement there was, is accounted for by the declining grade of the track and the running out of the slack.

If it be assumed, however, that the angle cock was defective, still the plaintiff should not recover. It is elementary that in order to recover the burden was upon her to show that the defect in the angle cock was the proximate cause of the injury and death of the deceased. Here again there is nothing upon which an inference can be based that the defect, if any, in the angle cock was the proximate cause of the accident. The evidence is positive that the angle cock was in good condition and working all right immediately after the accident. True, there is evidence that it worked "hard," or was "stiff," the next morning after the train had been moved about 50 miles from where the angle cock had been last tried, and where it was found to be in good order. If the angle cock had not been tried and had not been found to work by

the conductor immediately after the accident, then the fact that it worked "hard," or was "stiff," the next morning might at least furnish some basis however weak, upon which to base an inference that it was not in good order the evening before when the accident occurred. There is, however, no room for such an inference in view of the conductor's evidence that it worked all right. It must be remembered that that was plaintiff's own evidence, and which, under the circumstances was not overcome—not even affected—by what occurred the next morning. There is therefore no substantial evidence that the angle cock was not in good working order when the accident happened.

But, as before stated, if there were such evidence, still the plaintiff should fail because there is not the slightest evidence that the defect, if any existed, was the proximate cause of the accident. There is not the slightest evidence that the deceased attempted to work the angle cock, or that he even touched it before the accident happened. Nor is there any fact from which an inference can be deduced that, if the deceased did touch or attempt to work the angle cock, that caused him to fall under the wheels of the car. The attempt to work the angle cock would not naturally result in his falling under the wheels. Then again there is no evidence whatever respecting the time when the angle cock became defective, if it were in fact defective. There is evidence, however, which is undisputed, that it had been inspected in proper time and had been found in good working order, and that it was one in ordinary use. There is therefore nothing upon which an inference can be based as to how long the defect existed, if a defect did exist. If, therefore, the angle cock is one of the appliances which comes within the federal act and hence had to be provided by the defendant at its peril, still the evidence is beyond question that the defendant had complied with the federal act in that regard. The defendant having once complied with the federal act by providing a proper angle cock, but which, in operating the train, became defective or out of order it nevertheless was entitled to a reasonable time within which to cure such defect. While the

Certiorari.   Decision   Vacated

defendant would be required to exercise all reasonable care to maintain its appliances in good repair and working order and would have to exercise diligence in discovering any defect therein, and to remedy the same at the earliest possible moment in view of the circumstances, yet it would not be absolutely liable under the federal act if it exercised such care and diligence where, as here, the appliance once provided had suddenly become defective and out of working order. *St. L. & S. F. R. Co.* v. *Delk,* 158 Fed. 931, 86 C. C. A. 95, 14 Ann. Cas. 233; *U. S.* v. *Ill. Cent. R. Co.,* 170 Fed. 542, 95 C. C. A. 628; *M. P. Ry. Co.* v. *Brinkmeier,* 77 Kan. 14, 93 Pac. 621.

I am of the opinion therefore that under the law applicable to such facts the judgment based on the erroneous verdict should be reversed and the cause remanded to the district court of Weber county, with directions to grant a new trial, with costs of this appeal taxed against respondent.

CORFMAN, C. J., concurs.